1

**Sanjay S. Schmidt (SBN 247475)**
**LAW OFFICE OF SANJAY S. SCHMIDT**

2

1388 Sutter Street, Suite 810

3

San Francisco, CA 94109
T: (415) 563-8583

4

F: (415) 223-9717
ss@sanjayschmidtlaw.com

5

6

*Attorneys for Plaintiffs*,
SOHEIL HEJAZI SHOAR and FARZANEH MOHAMMADI

7

8

### UNITED STATES DISTRICT COURT

9

### NORTHERN DISTRICT OF CALIFORNIA

10

**SOHEIL HEJAZI SHOAR**, individually

11

and as co-successor in interest to Decedent
**VAHID HEJAZI SHOAR**, and

12

**FARZANEH MOHAMMADI**, individually
and co-successor in interest to Decedent

13

**VAHID HEJAZI SHOAR**,

14

                    Plaintiffs,

15

          vs.

16

**COUNTY OF SANTA CLARA**, a

17

municipal corporation, **EUREKA C. DAYE**,
PhD., MPH, MA, CCHP, Director, County of

18

Santa Clara Custody Health Services,
individually, Santa Clara County Sheriff

19

**LAURIE SMITH**, individually, **JOSE**
**MATHEWS**, MD, individually, **JESSICA**

20

**SPARKS**, LMFT, individually, and, DOES 1-
50, Jointly and Severally,

21

22

                    Defendants.

Case No.

**COMPLAINT FOR DAMAGES AND**
**DEMAND FOR JURY TRIAL**

1.  42 U.S.C. § 1983 –
    Civil Rights Violations
2.  42 U.S.C. § 1983 – *Monell* and
    Supervisory Liability
3.  California Civil Code § 52.1 (b) – State
    Civil Rights Violations
4.  Title III of the ADA
5.  Negligence

23

24

          Plaintiffs, by and through their attorney, the LAW OFFICE OF SANJAY S. SCHMIDT,

25

for their Complaint against Defendants, state the following:

26

### INTRODUCTION

27

          This is a tragic in-custody death case, in which VAHID HEJAZI SHOAR ("Decedent" or

28

"VAHID"), a despondent man who reported during intake being suicidal every day for the

*Shoar, et al. v. County of Santa Clara, et al.*
Complaint for Damages, Declaratory and Injunctive Relief, and Demand for Jury Trial
Case No.
1

preceding two months since he stopped being able to see his son, and who had previously been placed on suicide watch holds in Defendants' jail on no less five occasions just in the preceding six months (during June of 2020 and October of 2020) due to suicidal ideation and overt suicide attempts, was initially placed on a suicide watch, a California Welfare and Institutions Code § 5150 hold when he was booked, on December 27, 2020, but even though he remained a moderate to high risk of suicide, he was discharged, on January 2, 2021, back to a cell that was not monitored with suicide watch precautions and in which he had access to a ligature (a blanket); very shortly thereafter, and not unexpectedly, he committed suicide, just as he had told countless employees of the COUNTY that he planned to do. Prior to committing suicide, the Decedent pleaded over and over to talk to his son, stating that all he was asking for was to talk to his son. He never did get to talk to his son, Plaintiff SOHEIL HEJAZI SHOAR, that day, however. SOHEIL HEJAZI SHOAR never had the chance to even say goodbye to his father, who desperately wanted to speak to his son. VAHID's preventable suicide was not even reported to Plaintiffs by a COUNTY OF SANTA CLARA employee until five days later, on January 7, 2021.

## JURISDICTION

1.   This is a civil rights, wrongful death/survival action, arising from Defendants' failure to provide for the pretrial detainee-Decedent's serious medical needs, failure to provide treatment and suicide precautions, negligence, and failure to perform other legal obligations concerning Decedent's serious medical needs, which occurred in the Santa Clara County Main Jail Complex, in the County of Santa Clara, California, resulting in the death of VAHID HEJAZI SHOAR by suicide, on January 2, 2021.

2.   Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343(a)(3) and (4) because this case is being brought to obtain compensatory and punitive damages for the deprivation, under color of state law, of the rights of citizens of the United States that are secured by the United States Constitution, pursuant to 42 U.S.C. §§ 1983 and 1988.

3.   This action is brought pursuant to the First and Fourteenth Amendments to the United States Constitution, the Americans with Disabilities Act ("ADA") – 42 U.S.C. § 12132, and the

*Shoar, et al. v. County of Santa Clara, et al.*
Complaint for Damages, Declaratory and Injunctive Relief, and Demand for Jury Trial
Case No.
2

1    laws and Constitution of the State of California.  Plaintiffs further invoke this Court's supplemental

2    jurisdiction, pursuant to 28 U.S.C. § 1367 (a), to hear and decide claims arising under state law.

3                    **INTRADISTRICT ASSIGNMENT TO SAN JOSE DIVISION**

4        4.  A substantial part of the events and/or omissions complained of herein occurred in the

5    County of Santa Clara, California, and, pursuant to Northern District Civil Local Rule 3-2(e), this

6    action is properly assigned to the San Jose Division of the United States District Court for the

7    Northern District of California.

8                            **PARTIES AND PROCEDURE**

9        5.  Plaintiff SOHEIL HEJAZI SHOAR is a competent adult, and is the son of VAHID HEJAZI

10   SHOAR, Deceased. Plaintiff SOHEIL HEJAZI SHOAR is a proper co-successor in interest to

11   VAHID HEJAZI SHOAR, pursuant to California Code of Civil Procedure § 377.11; his co-

12   successor in interest declaration, filed pursuant to California Code of Civil Procedure § 377.32, is

13   attached to this Complaint as Exhibit A. Plaintiff SOHEIL HEJAZI SHOAR brings these claims

14   individually and as co-successor in interest to VAHID HEJAZI SHOAR, Deceased, and the claims

15   are brought pursuant to California Code of Civil Procedure sections 377.20, et seq. and 377.60, et

16   seq., which provide for survival and wrongful death actions. The claims set forth below are also

17   brought by SOHEIL HEJAZI SHOAR individually and on behalf of Decedent VAHID HEJAZI

18   SHOAR on the basis of 42 U.S.C. §§ 1983 and 1988, the United States Constitution, Title III of

19   the ADA, and federal and state civil rights law.

20       6.  Plaintiff FARZANEH MOHAMMADI is a competent adult, and is the surviving spouse

21   of VAHID HEJAZI SHOAR, Deceased. Plaintiff FARZANEH MOHAMMADI SHOAR is a

22   proper co-successor in interest to VAHID HEJAZI SHOAR, pursuant to California Code of Civil

23   Procedure § 377.11; her co-successor in interest declaration, filed pursuant to California Code of

24   Civil Procedure § 377.32, is attached to this Complaint as Exhibit A. Plaintiff FARZANEH

25   MOHAMMADI brings these claims individually and as co-successor in interest to VAHID

26   HEJAZI SHOAR, Deceased, and the claims are brought pursuant to California Code of Civil

27   Procedure sections 377.20, et seq. and 377.60, et seq., which provide for survival and wrongful

28

*Shoar, et al. v. County of Santa Clara, et al.*
Complaint for Damages, Declaratory and Injunctive Relief, and Demand for Jury Trial
Case No.
3

1   death actions. The claims set forth below are also brought by FARZANEH MOHAMMADI
2   individually and on behalf of Decedent VAHID HEJAZI SHOAR on the basis of 42 U.S.C. §§
3   1983 and 1988, the United States Constitution, the ADA, and federal and state civil rights law.

4          7.   Defendant COUNTY OF SANTA CLARA ("COUNTY") is a municipal corporation, duly
5   organized and existing under the laws of the State of California, and is the employer of the
6   individual COUNTY defendants, including employees of the Santa Clara Valley Health and
7   Hospital System, Custody Health Services ("CHS"), the Santa Clara County Sheriff's Office, and
8   other agencies, as well as certain DOE Defendants. Under its authority, the COUNTY operates the
9   Santa Clara Valley Health and Hospital System, which provides medical care, including mental
10   health and psychiatric services, to inmates in the COUNTY's jails. Under its authority, the
11   COUNTY also operates the Santa Clara County Sheriff's Office ("SCSO"). The COUNTY is sued
12   under state law, 42 U.S.C. § 1983, and Title III of the Americans with Disability Act. The
13   individual COUNTY Defendants and certain, to-be-identified DOE Defendants are sued under
14   state law and 42 U.S.C. § 1983.

15          8.   Defendant EUREKA C. DAYE, PhD., MPH, MA, CCHP, the Director for the County of
16   Santa Clara Custody Health Services ("DAYE"), is and at all material times was responsible for
17   medical and mental health care in the COUNTY's detention facilities and was and is responsible
18   for making and enforcing policies, procedures, and training related to the medical and mental
19   health care of prisoners and pretrial detainees in Defendant COUNTY OF SANTA CLARA's jails,
20   including: assessing inmates for possible suicide risk; ensuring that suicide precautions are not
21   lifted without a proper assessment and without reasonable prevention precautions; ensuring an
22   individualized treatment plan is formulated and followed before suicide prevention precautions are
23   lifted; ensuring an individualized safety plan is formulated, documented, and followed prior to the
24   lifting of suicide safety precautions; instituting appropriate suicide precautions; approving housing
25   classification; instituting appropriate observation to prevent suicide; instituting appropriate
26   treatment plans for the serious mental health needs of inmates; communicating about an inmate's
27   suicide risk with custodial staff, health care professionals, and outside facilities; ensuring

28

*Shoar, et al. v. County of Santa Clara, et al.*
Complaint for Damages, Declaratory and Injunctive Relief, and Demand for Jury Trial
Case No.
4

compliance with state and federal law; and, ensuring compliance with court orders. On information and belief, Defendant DAYE was ultimately responsible for the COUNTY's provision of medical and mental health care to inmates at the jail, including assessing inmates for possible suicide risk, instituting appropriate suicide-prevention programs, and ensuring that inmates in COUNTY's care were not discharged from suicide precautions without a comprehensive suicide risk assessment, individualized treatment plan, and individualized safety plan.

9.   Defendant COUNTY OF SANTA CLARA Sheriff LAURIE SMITH ("SMITH"), at all times mentioned herein was employed by Defendant COUNTY as Sheriff for the COUNTY, and was acting within the course and scope of that employment. She is being sued in her individual capacity as Sheriff for the COUNTY. At all material times, Sheriff SMITH was the final policy making official for the COUNTY's Sheriff's Department and jail, ultimately responsible for all policies, procedures, supervision, and training for the SCSO, including at the jail.

10. Defendant JOSE MATHEWS, MD ("MATHEWS"), at all times mentioned herein was a physician licensed to practice medicine in the State of California, a Board-certified psychiatrist, was employed by Defendant COUNTY, and was acting within the course and scope of that employment. Defendant MATHEWS was responsible for providing care to the Decedent, was responsible for creating an individualized treatment plan and an individualized safety plan, and was responsible for making an appropriate recommendation for the housing of Decedent after each assessment of Decedent.

11. Defendant JESSICA SPARKS, LMFT ("SPARKS"), at all times mentioned herein was employed by Defendant COUNTY as a clinician on an inpatient acute psychiatric unit in the COUNTY's jail, and was acting within the course and scope of that employment. Defendant SPARKS was the case manager for VAHID HEJAZI SHOAR while he was in custody at the COUNTY's jail, which meant she was responsible for ensuring his mental health needs were met, that he was provided adequate and appropriate treatment, and that a treatment plan was developed and followed, including a safety plan, among other things.

12. Defendant DOE 1 was at all times herein mentioned either responsible for providing care

*Shoar, et al. v. County of Santa Clara, et al.*
Complaint for Damages, Declaratory and Injunctive Relief, and Demand for Jury Trial
Case No.
5

to the Decedent or overseeing the provision of medical and psychiatric care at Defendant COUNTY's jail. Defendant DOE 1 was responsible for overseeing and providing medical and mental health care to prisoners and detainees, and for instituting appropriate policies, procedures, and training concerning suicide-risk assessment and prevention protocols, and was acting within the course and scope of that employment. Furthermore, Defendant DOE 1 was at all times responsible for the medical and psychiatric care provided to VAHID HEJAZI SHOAR at the COUNTY's jail, and for making sure that VAHID HEJAZI SHOAR was placed on appropriate suicide precautions and/or transferred for inpatient psychiatric care, and that VAHID HEJAZI SHOAR was not improperly assessed and improperly discharged from suicide precautions.

13. Certain DOE Defendants, at all material times, were employees and agents of Defendant COUNTY SANTA CLARA, who were responsible for either the appropriate care of – or if they were not able to provide it – the transfer of VAHID HEJAZI SHOAR to another appropriate inpatient facility, and failed or refused to do so, and/or were responsible for assigning VAHID HEJAZI SHOAR to appropriate housing and housing classification, with appropriate observation given his suicide risk. In doing the acts or omissions hereinafter described, certain DOE Defendants acted within the course and scope of their employment with Defendant COUNTY OF SANTA CLARA, and acted under color of state law. The individually named Defendants and certain DOE Defendants were either Correctional Officers, Sheriff's Deputies, Sergeants, Captains, Lieutenants, other jail personnel, Doctors, Nurses, Licensed Clinical Social Workers, or other medical professionals and/or civilian employees and/or agents of the COUNTY who were responsible for the care, housing, observation, and safety of inmates, including VAHID HEJAZI SHOAR, and/or the transfer of VAHID HEJAZI SHOAR for inpatient psychiatric care.

14. The individually named Defendants above and certain DOE Defendants are sued in their individual capacities.

15. At all times mentioned herein, Defendants DAYE, SMITH, MATHEWS, SPARKS, and DOES 1 through 30, in doing the acts or omissions hereinafter described, acted within the course and scope of their employment with the COUNTY, and acted under color of state law. Defendants

*Shoar, et al. v. County of Santa Clara, et al.*
Complaint for Damages, Declaratory and Injunctive Relief, and Demand for Jury Trial
Case No.
6

DAYE, SMITH, MATHEWS, SPARKS, and DOES 1 through 30 are sued in their individual capacities.

16. The true names or capacities, whether individual, corporate, associate, or otherwise of Defendants named herein as DOES 1 through 50 are unknown to Plaintiff, who, therefore, sues said Defendants by said fictitious names. Plaintiff will amend this Complaint to show said Defendants' true names and capacities when the same have been ascertained. Plaintiff is informed, believes, and thereon alleges that all Defendants sued herein as DOES are in some manner responsible for the acts, omissions, and injuries alleged herein.

17. Plaintiffs allege, on information and belief, that each of the Defendants sued herein was wrongfully, deliberately indifferently, negligently, and/or otherwise responsible in some manner for the events and happenings as hereinafter described, and proximately caused injuries and damages to Plaintiffs and/or Decedent. Further, one or more DOE Defendants was at all material times responsible for the hiring, training, supervision, and discipline of other defendants, including both the individually named and DOE Defendants.

18. DOE Defendants 1-30 were and/or are to-be-identified employees/agents of the COUNTY OF SANTA CLARA, and at all material times acted under color of law and within the course and scope of that employment.

19. DOE Defendants 31-40 were and/or are and/or may be to-be-identified employees agents of another municipality or municipalities, and at all material times acted under color of law and within the course and scope of that employment.

20. DOE Defendants 41-50 are of an unknown capacity, whether individual, municipal, corporate, or otherwise.

21. Plaintiffs are informed and believe, and thereon allege, that each of the Defendants sued herein was negligently, wrongfully, and/or otherwise responsible in some manner for the events and happenings as hereinafter described, and proximately caused injuries and damages to Plaintiffs.

22. Plaintiffs is informed and believes, and thereon alleges, that each of the Defendants was at

*Shoar, et al. v. County of Santa Clara, et al.*
Complaint for Damages, Declaratory and Injunctive Relief, and Demand for Jury Trial
Case No.
7

all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things herein alleged, was acting within the course and scope of that relationship.

23. Plaintiffs are further informed and believe, and thereon allege, that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may be hereinafter otherwise, specifically alleged.

24. At all material times, each Defendant was jointly engaged in tortious activity, and was an integral participant in the events and violations of rights described herein, resulting in the deprivation of Plaintiffs' and Decedent's constitutional rights and other actionable harm.

25. The acts and omissions of all Defendants, except any to-be-identified DOE Defendants, were at all material times pursuant to the actual customs, policies, practices, and/or procedures of the COUNTY OF SANTA CLARA.

26. At all material times, each Defendant acted under color of the laws, statutes, ordinances, and regulations of the State of California.

27. Plaintiffs timely and properly presented a government code claim with the County of Santa Clara, pursuant to California Government Code § 910 *et seq*., and this action is timely filed within all applicable statutes of limitation.

28. This Complaint may be pleaded in the alternative, pursuant to Rule 8(d)(2) of the Federal Rules of Civil Procedure.

## GENERAL ALLEGATIONS

29. Plaintiff re-alleges each and every paragraph in this Complaint, as though fully set forth here.

30. VAHID HEJAZI SHOAR was 52 years old at the time of his death (he was born on October 1, 1968), on January 2, 2021. On a number of different occasions when he was seen by COUNTY medical professionals, the Decedent previously had been diagnosed with Major Depressive Disorder, recurrent and severe, Adjustment Disorder with Depressed Mood, Unspecified Psychotic Disorder, Psychosis, Major Depressive Disorder, Recurrent, Moderate, with psychotic features,

*Shoar, et al. v. County of Santa Clara, et al.*
Complaint for Damages, Declaratory and Injunctive Relief, and Demand for Jury Trial
Case No.
8

and Amphetamine-type Use Disorder, Moderate, inter alia. His history of mental illness was well known by Defendants COUNTY, the individual Defendants working in COUNTY's Jail, and others; indeed, he had been deemed an imminent danger to himself and placed on suicide watch, due to suicidal conduct, an attempt, and/or expressing suicidal ideation during previous incarcerations in the COUNTY OF SANTA CLARA jail on no less than **five** (**5**) occasions (no less than four of which were overt suicide attempts in the jail itself, in addition to a reported suicide attempt that occurred on the outside, prior to his October 4, 2020 booking) during 2020 alone, including, but not limited to: incidents on **June 13**, **2020** (suicide attempt in custody), **October 4**, **2020** (reported recent suicide attempt while he was out and expression of suicidal ideation during booking), **October 7**, **2020** (suicide attempt in custody), **October 12**, **2020** (suicide attempt in custody), and **October 15**, **2020** (suicide attempt in custody).

31. However, with appropriate treatment, VAHID enjoyed life's activities, including spending time with his family and friends, especially his son, Plaintiff SOHEIL HEJAZI SHOAR, as well as cooking Persian food. VAHID dreamed of someday owning and running a restaurant that served Persian food, and worked as a cook in at least one Persian restaurant. VAHID had recently been really down on his luck though.

32. He had owned a food truck from which he served Persian food, and put up the truck as collateral to obtain a loan with which he and some partners planned to purchase a restaurant in San Francisco. VAHID was defrauded by some individuals, however, and ended up losing all his money, as well as the food truck.

33. VAHID was arrested on December 27, 2020, and booked into the COUNTY OF SANTA CLARA jail.

34. During the booking process, on December 27, 2020, VAHID reported suicidal ideation, stating once he is placed in his cell, he planned to either hang himself or strangle himself. He also reported that he was upset, and had been suicidal every day for the past two months, since he stopped being able to see his son. Additional stressors in his life that he reported were being homeless and having a lack of finances. He felt hopeless.

*Shoar, et al. v. County of Santa Clara, et al.*
Complaint for Damages, Declaratory and Injunctive Relief, and Demand for Jury Trial
Case No.
9

35. Consequently, on **December 27**, **2020**, at approximately 7:20 p.m., the Decedent was placed on a California Welfare and Institutions Code § 5150 ("5150") 72-hour hold that is supposed to include appropriate treatment and evaluation; the 72-hour evaluation and treatment period was scheduled to end on December 30, 2020, at 7:20 p.m. On information and belief, his son was not notified of his suicidality, nor was he provided an opportunity to communicate with him during this period of severe hopelessness.

36. While in the custody of COUNTY and Defendant SMITH in their jail, VAHID continued suffering from serious, but treatable, mental illnesses and manifesting such illnesses with his words and conduct; in-custody, his condition worsened, he became and thereafter remained suicidal, and remained a danger to himself.

37. While he was in the custody of COUNTY and Defendant SMITH in their jail, VAHID's mental health continued to deteriorate, and he remained an imminent danger to himself.

38. On December 28, 2020, it was noted by COUNTY employee Peggy Rogers, LMFT, that VAHID had reported previously that he had a restaurant, but ended up going bankrupt, which prompted him to start using methamphetamine. The assessment included likely drug withdrawal. LMFT Rogers also noted that VAHID was not engaging in the conversation, and did not acknowledge the 5150 advisement, so she gave him an unsigned copy of it.

39. VAHID reported **5** recent suicide attempts to Charlene, Mahabali, LMFT, on December 28, 2020, at approximately 5:42 p.m. he reported feeling suicidal due to the death of his father and uncle, and marital problems. When asked if he was suicidal, VAHID reported, "I'm always thinking of that," and "I have 5 times" when asked about previous attempts. Per LMFT Mahabali's chart note, VAHID also stated that: "before I was hearing voices. Now I'm seeing things. It was last night. I was talking to my son[,] but he wasn't there. I see shapes at the corner of my eye." A Mental Status Examination was conducted, and, among other things, LMFT Mahabali recorded his thought content as "Suicidal ideation", his memory as "Fair", his insight as "Fair", his judgement as "Impaired," and his impulse control as "Impaired." The plan was to continue his housing on unit 8A, maintaining him on suicide watch precautions.

*Shoar, et al. v. County of Santa Clara, et al.*
Complaint for Damages, Declaratory and Injunctive Relief, and Demand for Jury Trial
Case No.
10

40. On December 29, 2020, one Dr. Singh discharged VAHID off of 15 minute cell checks and the "Ferguson gown" (an anti-suicide smock), both of which are suicide prevention measures; this was done, despite the fact that Shirley Chao, RN, noted that: "Pt was not verbal interaction to writer And very Limited verbal interaction/poverty on answering question. Pt has been sleeping on table almost the whole day shift. Room is not clean and is very smelly / strong odor. Pt show no eye contact. Most of the time sleeping on table. … Pt is isolative and withdrawal. Pt deny any SA/SI/HI/AH/VH …"

41. On **December 30, 2020**, another 5150 hold was initiated, based on a referral by a COUNTY OF SANTA CLARA Sheriff's Deputy, at approximately 11:00 a.m. because the Decedent was **adamant that he will kill himself**, and the Decedent had been pounding on his cell door and **yelling nonstop**. The COUNTY Deputy indicated that Decedent was unstable and had been kicking and pounding on his cell door, and yelling nonstop. Notably, the advisement form indicates that: "Client is **adamant that he will kill himself, he feels hopeless and helpless, stating that he has lost everything. He cannot be managed in current housing as he is impulsive and unpredictable**."

42. On December 30, 2020, at approximately 2:55 p.m., Aiza Brien, RN, noted the following in the assessment of VAHID: "He appears sleepy with his eyes closed while he spoke. Pt states he does not know the date but that we are in '2021.' He reports he has been homeless for a year. States he was driving 25 mph at the part and he saw an image of his son's face and ended up hitting another car …" RN Brien also recorded that VAHID stated that: "**I have been suicidal for some time now**, for a year since I haven't been able to see my son. … . **I have been hearing voices before**, **hearing myself talk to myself and recently I see images**, they're not clear. **It's like seeing something in the corner of your eye**. …. **Is there a judge that will allow me to commit suicide**?" RN Brien updated VAHID's plan of care, placing him on frequent monitoring for his safety and needs.

43. On **December 31, 2020**, at approximately 9:41 a.m., VAHID was interviewed by Defendant MATHEWS, who was aware that a hold had been initiated by a mental health clinician,

*Shoar, et al. v. County of Santa Clara, et al.*
Complaint for Damages, Declaratory and Injunctive Relief, and Demand for Jury Trial
Case No.
11

on December 30, 2020, at 11:00 a.m., stating that: "**Client is adamant that he will kill himself.** He is not directable **and he is hopeless and helpless and stating that he has nothing to live for** since he lost his wife and son. … . **He is impulsive and unpredictable and cannot be maintained in his current housing.**" Defendant MATHEWS noted that VAHID desperately wanted to speak to his son, Plaintiff SOHEIL HEJAZI SHOAR, and that VAHID said: "**If I cannot talk to my son I will not answer any questions**." Defendant SPARKS was with Defendant MATHEWS during this interview, which was conducted with the assistance of a Farsi interpreter. The Decedent told these Defendants that for the past four days he had been trying to talk to his son on the phone, but had not been given the opportunity to do so. Defendant MATHEWS also noted that VAHID "**admits to hearing the voice of his son and he also talks to himself**." VAHID also related to these Defendants that, about 6 months prior to the date of the interview, he had started using methamphetamine, had recently been separated from his wife, that he had been homeless without a job, that his father had passed away about 11 months prior to the interview, and his uncle had died about 3 months prior to the interview.

44. Notably, during the December 31, 2020 interview with Defendants MATHEWS and SPARKS, VAHID denied ever being subjected to any inpatient psychiatric hospitalizations, but Defendant MATHEWS noted that "he has been to EPS in the middle of October for suicidal gestures."[1] Defendant MATHEWS also noted, with respect to whether VAHID had a history of suicide attempts, that: "Today the patient said that he has never attempted suicide but previous providers have **noted that he has made 5 suicide attempts. He has banged his head against a wall and tied a ligature around his neck**." Thus, both Defendant MATHEWS and Defendant SPARKS were made aware from this interview that VAHID was severely emotionally disturbed, but was not a reliable historian or reporter of his suicidality, since he denied ever being hospitalized for psychiatric reasons an denied any prior suicide attempts, despite being in EPS in the middle of October for suicidal gestures, as noted by Defendant MATHEWS, as well as on **June 13**, **2020** (suicide attempt in COUNTY's custody followed by 5150 hold), **October 4**, **2020** (in-custody

[1] On information and belief, EPS is an acronym for "Emergency Psychiatric Services"

*Shoar, et al. v. County of Santa Clara, et al.*
Complaint for Damages, Declaratory and Injunctive Relief, and Demand for Jury Trial
Case No.
12

5150 hold in COUNTY's jail), **October 7**, **2020** (suicide attempt in COUNTY's custody followed by 5150 hold), **October 12**, **2020** (suicide attempt in COUNTY's custody followed by 5150 hold), and **October 15**, **2020** (suicide attempt in COUNTY's custody followed by 5150 hold).

45. During this interview, Defendant MATHEWS also noted that VAHID's mood was "**Unhappy**," he was experiencing auditory hallucinations, his insight was "Limited," his judgment was "Limited," and his impulse control was "Limited". The 5150 hold and 15-minute safety checks were maintained, and Defendant MATHEWS recommended that VAHID remain on Unit 8A with direct supervision.

46. On January 1, 2021, at approximately 4:29 p.m., Defendant MATHEWS conducted an assessment of VAHID, and noted that VAHID "continues to deny that he is actually depressed", "but refuses to address the question of suicidality." Defendant MATHEWS noted that VAHID answered all the questions in a "vague manner. He could not say whether he was suicidal or not…." Defendant MATHEWS's recommendations were for VAHID to continue being housed on Unit 8A and for 15-minute safety checks of VAHID to continue.

47. On **January 2**, **2021**, Defendants MATHEWS and SPARKS apparently saw Decedent together again at approximately 9:22 a.m. The Decedent was again "**adamant that he is not going to talk**" to them, unless he would be allowed to talk to his son on the phone, but noted that "he did proceed to answer most of [MATHEWS's] questions." After this interview, Defendants MATHEWS and SPARKS discontinued the 5150 hold on VAHID, discontinued suicide prevention precautions, such as 15-minute safety checks, direct supervision, and preventing access to ligature devices or other devices that could be used to commit suicide, and discharged VAHID from Unit 8A. Notwithstanding any alleged responses that VAHID gave to Defendants MATHEWS and SPARKS, he was still and remained at an elevated risk of suicide at this time, and reasonable precautions needed to be taken, in view of the significant risk that VAHID still posed of committing suicide, based on the totality of circumstances and his history.

48. Decedent exhibited many high risk factors that were still present at the time Defendants, with deliberate indifference to VAHID's serious medical needs, and with a reckless disregard for

*Shoar, et al. v. County of Santa Clara, et al.*
Complaint for Damages, Declaratory and Injunctive Relief, and Demand for Jury Trial
Case No.
13

his and Plaintiffs' rights, discharged him from Unit 8A and discontinued suicide prevention measures, including: a history of suicidal ideation and at least **five (5)** overt suicide attempts (which Defendants MATHEWS and SPARKS had actual knowledge of), a diagnosis of a psychotic disorder, a secondary diagnosis of a substance abuse disorder, specifically, amphetamine-type use disorder, severe and depressing relationship problems with his wife, impulse control issues, and a history of mental health treatment and mental health diagnoses, as well as losing his father and uncle, and being denied a phone call to his son. Thus, Decedent still posed a significant and elevated risk of committing suicide at this time.

49. Nevertheless, with a reckless disregard for the rights of Decedent and Plaintiffs, and with deliberate indifference to the serious needs of the Decedent, VAHID was discharged by Defendants MATHEWS and SPARKS off of Unit 8A, taken off of suicide prevention precautions, and was cleared to be housed in a single cell, alone, where he had access to a blanket, and was not being directly supervised, nor observed every 15-minutes with cell checks. Discharging Decedent into these conditions, under the circumstances outlined in the paragraphs above posed a substantial risk of serious harm to Decedent.

50. On information and belief, Defendants MATHEWS and SPARKS failed to conduct an adequate suicide risk assessment, and also failed to take reasonable steps to protect the safety of VAHID by formulating an appropriate, individualized treatment plan, as well as a safety plan. Additionally, Defendants MATHEWS, SPARKS, and to-be-identified COUNTY jail personnel failed to appropriately classify and house the Decedent in a safe cell by taking preventative measures.

51. Defendants MATHEWS, SPARKS, and other COUNTY Defendants, including SCSO personnel that Defendant SMITH is responsible for training and supervising, as well as to-be-identified DOE Defendants that are supervisors of such personnel, failed to take reasonable and needed preventive measures, including, but not limited to housing the Decedent in a cell that would not provide an opportunity for him to hang himself using a ligature or otherwise commit suicide, and preventing the Decedent from having access to a ligature device in the first place. Thus,

*Shoar, et al. v. County of Santa Clara, et al.*
Complaint for Damages, Declaratory and Injunctive Relief, and Demand for Jury Trial
Case No.
14

1  Defendants failed to provide safe and adequate housing for VAHID, without defects and/or flaws
2  that would render the cell unsafe for a suicidal person. Defendants also provided or failed to
3  remove the device that VAHID used to commit suicide. The jail and cells in which Defendants
4  placed VAHID after he was discharged by Defendants MATHEWS and SPARKS from the 5150
5  hold also constituted an unreasonably dangerous condition.

6  52. Additionally, Defendants MATHEWS and SPARKS were aware of the Decedents history
7  and numerous previous 5150 holds; indeed, Defendant SPARKS treated the Decedent on October
8  12, 2020, when he had scratched his right arm, reported being suicidal, stated that he wanted to
9  die, and stated that he had "nothing to live for." She was also aware that he had attempted to tie a
10 sheet around his neck during that October incarceration.

11 53. Prior to discharging the Decedent from the 5150 suicide watch hold, Defendants had a duty
12 to conduct an appropriate and thorough suicide risk assessment, but, on information and belief,
13 failed to do so. Defendants were, inter alia, supposed to obtain a clinical history, including previous
14 suicidal behavior, and also had a duty to promote and provide an immediate and ongoing protective
15 physical environment, all of which should have been part of an appropriate suicide risk assessment.
16 Furthermore, Defendants were trained and knew or should have known that, "[d]enial of suicidal
17 ideation and/or a patient's agreement to a safety/crisis plan **does not invalidate suicide risk**."
18 Defendants were also required to, but, on information and belief failed to, create and implement a
19 care plan, including a safety/crisis management plan that included family and collateral contacts
20 in planning, established and reconnected linkage with outpatient providers and community based
21 services, identified real or perceived barriers to treatment, and addressed factors that impacted
22 treatment adherence, inter alia.

23 54. As a consequence of all Defendants' deliberate indifference and/or negligence, including
24 actions and/or omissions, and as a result of his serious, but treatable, mental health conditions and
25 mental illness, on January 2, 2021, VAHID HEJAZI SHOAR committed suicide in his jail cell by
26 using a blanket as a ligature.

27 55. Consequently, on January 2, 2021, a "Mandown" was called at approximately 7:00 p.m.;

28
*Shoar, et al. v. County of Santa Clara, et al.*
Complaint for Damages, Declaratory and Injunctive Relief, and Demand for Jury Trial
Case No.
15

1  VAHID HEJAZI SHOAR was found down, strangled with a blanket, at approximately 7:00 p.m.

2  He was unresponsive, and medical personnel responded soon thereafter, attempting CPR and

3  intubation, but efforts to revive him failed. He was taken to the emergency department at the Santa

4  Clara Valley Medical Center, but efforts at reviving him failed; the admission diagnoses were:

5  Asphyxiation due to hanging, and Intentional self-harm by other specified means. There, he was

6  pronounced dead at 7:42 p.m.

7      56. The cause of death was ruled "HANGING" – the Decedent "HANGED SELF WITH

8  BLANKET LIGATURE" – and the other significant conditions contributing to his death were

9  determined to be recent suicidal ideation, prior suicide attempts, and unspecified psychotic

10  disorder

11      57. Plaintiffs were not notified that VAHID had committed suicide in Defendant COUNTY's

12  custody until January 7, 2021, when Plaintiff MOHAMMADI received a telephone call from a

13  representative from the COUNTY OF SANTA CLARA's Office of the Medical Examiner-

14  Coroner's Office.

15      58. Neither Plaintiff was not notified after any of Plaintiff's previous suicide attempts.

16  Plaintiffs were only notified when the Decedent's final attempt was successful.

17      59. On information and belief, VAHID's court dates on his pending matter had been canceled

18  at least twice because he was not stable, but yet his family was never notified of the grave danger

19  he posed to himself while in COUNTY's custody at its jail.

20      60. Defendants' deliberate indifference to VAHID HEJAZI SHOAR's serious medical needs

21  and Defendants' other tortious, unconstitutional, and/or otherwise wrongful conduct caused

22  VAHID HEJAZI's suicide in his jail cell.

23      61. While VAHID was incarcerated as a pretrial detainee from December 27, 2020 to January

24  2, 2021, the individually named Defendants and DOES 1-30, including Defendant SMITH, Jail

25  deputies/Correctional Officers ("COs"), jail administrators, medical personnel, and/or other law

26  enforcement officers and/or other COUNTY employees knew and/or had reason to know that

27  VAHID was a mentally ill and emotionally disturbed person, with immediate and serious medical

28

*Shoar, et al. v. County of Santa Clara, et al.*
Complaint for Damages, Declaratory and Injunctive Relief, and Demand for Jury Trial
Case No.
16

needs. The individually named and DOE Defendants further knew and/or had reason to know that VAHID had both threatened to, expressed a clear intent to – and attempted to – commit suicide on several occasions already, and, as such, knew VAHID was suicidal and/or at a serious risk for committing suicide. Despite knowing this, Defendants were deliberately indifferent to VAHID's immediate and serious medical needs, including risk of suicide, suicidality, mental illness, and emotional disturbance.

62. The individually named Defendants, other Jail and medical personnel, and DOES 1-30 failed to properly and appropriately assess and classify VAHID and failed to properly assess and classify his serious medical needs.

63. Additionally, the COUNTY Defendants failed to provide safe and adequate housing for VAHID, with deliberate indifference to his rights and serious medical needs, by housing him in an environment that was unsafe for a suicidal person, failing to provide him with a safety smock and safety bedding, as well as providing or failing to remove the blanket that VAHID used to commit suicide, and failing to observe and check on VAHID's welfare as required by law and regulations. The jail and cells in which the COUNTY Defendants placed VAHID also constituted unreasonably dangerous conditions.

64. Defendants failed to properly and adequately monitor and care for VAHID.

65. Further, the COUNTY failed to accommodate VAHID's mental illness and disability and Defendants' wrongful conduct herein was done at least in part because of VAHID's disability and/or psychiatric condition.

66. The Defendants' actions and omissions and the manner in which VAHID was incarcerated was contrary to generally accepted practices and jail procedures, causing the wrongful death of VAHID HEJAZI SHOAR.

## DECEDENT'S KNOWN HISTORY OF SUICIDAL IDEATION AND SUICIDE ATTEMPTS[2]

67. On **June 13**, **2020**, while in custody at the COUNTY OF SANTA CLARA Main Jail, the

---

[2] This is only a brief sampling and overview; the facts set forth in this section are not exhaustive.

*Shoar, et al. v. County of Santa Clara, et al.*
Complaint for Damages, Declaratory and Injunctive Relief, and Demand for Jury Trial
Case No.
17

Decedent made an overt suicide attempt, prompting a determination by Holly Warneck, MFT, an Adult Custody Mental Health provider, that he was a danger to himself within the meaning of California Welfare and Institutions Code § 5150. Decedent attempted to put a sheet around his neck, and he had a small laceration on his left wrist. Decedent simulated the gesture of hanging himself and cutting his wrist, stating: "THAT IS IT. I AM DONE." He related to the COUNTY's staff, who duly noted it, that he intended to kill himself no matter what. He was deemed a danger to himself. Consequently, Decedent was admitted to the Santa Clara County Main Jail Acute Psychiatric Unit 8A.

68. On **October 4**, **2020**, during the booking process at the COUNTY OF SANTA CLARA Main Jail, the Decedent reported suicidality and hopelessness, reporting that he had nothing to live for and having thoughts of ending his life. Sadly, the Decedent had been booked for violating a restraining order that had been initiated as a result of an incident in which the Decedent had gone to his wife's house and tried to slit his wrist in front of her, prompting her to call the police. Decedent was deemed to be an imminent risk of harm to himself; a 5150 hold was initiated at 7:20 p.m., which set to end on October 7, 2020, at 7:20 p.m. A to-be-identified doctor at the COUNTY OF SANTA CLARA Jail noted that the Decedent was a "patient with recent depression and **suicide attempt**. Reports hopelessness and feels victimized. Reports thoughts to kill self and asks which states offer '**legal suicide**'".

69. On **October 7**, **2020**, while in custody at the COUNTY OF SANTA CLARA Main Jail, the Decedent made another **overt** suicide attempt by cutting himself on the wrist, and expressed suicidal ideation and hopelessness; according to a COUNTY MFT, that works in the COUNTY OF SANTA CLARA Main Jail, Cate Nelson, the Decedent reported to custody staff that: "IF I HAD A GUN I WOULD USE IT. MY FAMILY PROBLEMS HAVE MADE ME SUICIDAL. … **I DON'T KNOW WHAT TO DO**." A 5150 hold was initiated, with the 72-hour period observation commencing at approximately 01:05 a.m., which was set to end at 01:05 a.m. on October 10, 2020. During this 5150 hold, Decedent reported to Dr. Hiroya Nambu, who treated him for the left forearm laceration that he inflicted on himself (characterized by Dr. Nambu as a

*Shoar, et al. v. County of Santa Clara, et al.*
Complaint for Damages, Declaratory and Injunctive Relief, and Demand for Jury Trial
Case No.
18

"suicidal attempt in cell"), that he had **sharpened the metal rail of his bed over time and used it** that day (10/07/20) to cut his left forearm.

70. On **October 12**, **2020**, the Decedent made yet another overt suicide attempt or gesture of suicidality, scratching his right arm and making himself bleed – he used his wrist band to cut his arm several times – and reported that he was suicidal. The Decedent used his wrist band to cut his arm several times with it. Decedent was observed talking to himself, and was sad and withdrawn; he was not sleeping, and was drinking excessive water. Decedent stated that he "**wants to die**" and that "**he has nothing to live for**." Thus, another 5150 evaluation and treatment hold was initiated at 1:00 a.m., on October 12, 2020, which was set to end at 1:00 a.m., on October 15, 2020.

71. The Decedent, on October 12, 2020 was noted to be highly agitated, beating on his cell door loudly, and refusing a neurological assessment, thereby further exhibiting his severe mental health illness.

72. On October 15, 2020, at 1:21 p.m., Dr. Hooshmand noted that, "[y]esterday, he did endorse significant emotional[]" (referring to October 14, 2020).

73. On **October**, **15**, **2020**, notes by Dr. Yang Xu at 11:05 p.m. indicate that the Decedent presented "on a 5150 hold from the main jail after []he tied a ligature around his neck and attempted to his head against the wall in the holding cell. Patient mentioned having issues with his wife. Utox negative on 10/13/20." The Emergency Department notes indicated that, per the witnessing officer, the Decedent saw officers coming by, **wrapped sheet around his neck and started to lean forward** but was immediately stopped by officers. .." He was handcuffed and brought to the psychiatric unit, **attempting to bang his head against the wall**.

74. Dr. Xu noted that the Decedent indicated that, as of the October 15, 2020 interview, he had made three suicide attempts. Notably, the Decedent's wife, Plaintiff FARZANEH MOHAMMADI, was contacted while the Decedent was in this 5150 hold, and she provided background information about the Decedent and why he was troubled. The Decedent was discharged from the 5150 hold, at approximately 11:05 p.m., on October 15, 2020.

75. At all material times, and alternatively, the actions and omissions of each Defendant were

*Shoar, et al. v. County of Santa Clara, et al.*
Complaint for Damages, Declaratory and Injunctive Relief, and Demand for Jury Trial
Case No.
19

intentional, and/or wanton and/or willful, and/or conscience shocking, and/or reckless, and/or malicious, and/or deliberately indifferent to Plaintiff's rights, and/or done with actual malice, and/or grossly negligent, and/or negligent, and objectively unreasonable.

76. As a direct and proximate result of each Defendant's acts and/or omissions as set forth above, Plaintiffs, individually, sustained the following injuries and damages, past and future, including, but not limited to:

a. The wrongful death of VAHID HEJAZI SHOAR, pursuant to California Code of Civil Procedure § 377.60 *et seq.*;

b. Loss of support and familial relationships, including loss of love, companionship, comfort, affection, society, services, solace, and moral support;

c. All Plaintiffs' loss of their relationship with the Decedent, including pain and suffering and the attendant emotional distress, pursuant to federal civil rights law;

d. Emotional distress from the violations of their personal constitutional rights, including grief, sorrow, anxiety, sleeplessness, humiliation, and indignity;

e. Loss of enjoyment of life;

f. All other legally cognizable special and general damages;

g. Violations of state and federal constitutional rights; and,

h. All damages and penalties recoverable under 42 U.S.C. §§ 1983 and 1988, California Civil Code §§ 52 and 52.1 *et seq.*, California Code of Civil Procedure § 1021.5, and as otherwise allowed under California and United States statutes, codes, and common law.

77. As a direct and proximate result of each Defendant's acts and/or omissions as set forth above, Plaintiffs, as co-successors in interest of Decedent VAHID HEJAZI SHOAR, sustained the following injuries and damages, past and future, including, but not limited to:

a. Hospital and medical expenses incurred by VAHID HEJAZI SHOAR, pursuant to California Code of Civil Procedure § 377.20 *et seq.*;

b. Coroner's fees, funeral, and burial expenses, pursuant to California Code of Civil Procedure § 377.20 *et seq.*;

c. VAHID HEJAZI SHOAR's loss of life, pursuant to federal civil rights law;

*Shoar, et al. v. County of Santa Clara, et al.*
Complaint for Damages, Declaratory and Injunctive Relief, and Demand for Jury Trial
Case No.
20

d.  VAHID HEJAZI SHOAR's pre-death, conscious pain and suffering, pursuant to federal civil rights law; and,

e.  All damages and penalties recoverable under 42 U.S.C. §§ 1983 and 1988, California Civil Code § 52, and as otherwise allowed under California and United States statutes, codes, and common law.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (42 U.S.C. § 1983)
### PLAINTIFFS AGAINST DEFENDANTS DAYE, SMITH, MATHEWS, SPARKS and DOES 11-50

78. Plaintiffs re-allege and incorporate by reference each and every allegation contained in this complaint, as though fully set forth here.

79. By the actions and omissions described above, Defendants SMITH____, _____, and DOES 11-50, acting under the color of state law in their individual capacities, deprived VAHID HEJAZI SHOAR of the right to be free as a pretrial detainee of the rights, privileges, and immunities secured by the Fourteenth Amendment by subjecting him, or through their deliberate indifference, allowing others to subject him, to delay and denial of access to medical or mental health care for a serious, but treatable, medical or mental health condition.

80. The listed Defendants knew that VAHID HEJAZI SHOAR's medical condition was serious, but treatable, and knew or must have known that he required access and delivery to urgently needed medical/mental health care; Defendants further had a duty to provide VAHID HEJAZI SHOAR reasonable security and safe, appropriate housing and monitoring to accommodate his mental health condition.

81. The listed Defendants ignored, delayed, or denied to VAHID HEJAZI SHOAR urgently needed medical and psychiatric care and treatment. As a result of the Defendants' deliberate indifference to both VAHID HEJAZI SHOAR's need for medical care and treatment and his mental condition, Plaintiffs suffered damages and deprivation of constitutional rights, as described herein.

*Shoar, et al. v. County of Santa Clara, et al.*
Complaint for Damages, Declaratory and Injunctive Relief, and Demand for Jury Trial
Case No.
21

82. By the actions and omissions described above, the individually named Defendants violated 42 U.S.C. § 1983, depriving Plaintiffs and Decedent of the following well-settled constitutional rights that are protected by the First and Fourteenth Amendments to the U.S. Constitution:

    a. The right to be free from deliberate indifference to VAHID HEJAZI SHOAR's serious medical needs while in custody and confined in jail as a pretrial detainee, as secured by the Fourteenth Amendment;

    b. The right to be free from wrongful government interference with familial relationships and Plaintiff's right to companionship, society, and support, as secured by the First and Fourteenth Amendments.

83. The listed Defendants' failure to intervene, prevent, or stop the constitutional violations by others, when Defendants were in a position to so intervene when such violations were occurring, also renders such Defendant(s) liable for these violations.

84. Defendants subjected Plaintiffs to their wrongful conduct, depriving Plaintiffs and Decedent of the rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Plaintiffs (individually and on behalf of VAHID HEJAZI SHOAR) and others would be violated by their acts and/or omissions.

85. As a proximate result of the foregoing wrongful acts and/or omissions, Plaintiff sustained injuries and damages, as set forth above, in ¶¶ 76-77. Plaintiff is therefore entitled to general and compensatory damages in an amount to be proven at trial.

86. In committing the acts alleged above, the individually named Defendants and DOE Defendants acted maliciously and/or were guilty of a wanton and reckless disregard for the rights, safety, and emotional well-being of Plaintiffs and Decedent, and by reason thereof, Plaintiffs are entitled to punitive damages and penalties allowable under 42 U.S.C. § 1983, California Code of Civil Procedure §§ 377.20 et seq, and other state and federal law against these individual Defendants; no punitive damages are sought directly against the COUNTY.

87. Plaintiff is also entitled to reasonable costs and attorney's fees under 42 U.S.C. § 1988 and other applicable California codes and laws.

//

//

Shoar, et al. v. County of Santa Clara, et al.
Complaint for Damages, Declaratory and Injunctive Relief, and Demand for Jury Trial
Case No.
22

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SECOND CAUSE OF ACTION**
**(42 U.S.C. § 1983 – *Monell* and Supervisory Liability)**
**AGAINST DEFENDANTS COUNTY OF SANTA CLARA, Director EUREKA C. DAYE,**
**Sheriff LAURIE SMITH, and DOES 1-10**

88. Plaintiffs re-allege and incorporate by reference each and every allegation contained in this complaint, as though fully set forth herein.

89. As supervisors, Defendants Director EUREKA C. DAYE, Sheriff LAURIE SMITH, and DOES 1-10 each permitted and failed to prevent the unconstitutional acts of other Defendants and individuals under their supervision and control, and failed to properly supervise such individuals, with deliberate indifference to the rights and serious medical needs of VAHID HEJAZI SHOAR. Each of these supervising Defendants either directed her or his subordinates in conduct that violated Decedent's rights, OR set in motion a series of acts and omissions by his or her subordinates that the supervisor knew or reasonably should have known would deprive Decedent of rights, OR knew his or her subordinates were engaging in acts likely to deprive Decedent of rights and failed to act to prevent his or her subordinate from engaging in such conduct, OR disregarded the consequence of a known or obvious training deficiency that she or he must have known would cause subordinates to violate Decedent's rights, and in fact did cause the violation of Decedent's rights.  (See, Ninth Circuit Model Civil Jury Instruction 9.4). Furthermore, each of these supervising Defendants is liable in their failures to intervene in their subordinates' apparent violations of Decedents' rights.

90. On information and belief, a Suicide Risk Assessment tool ("SRA") was implemented on October 24, 2016, which was intended to be used to both initiate suicide precautions in COUNTY's jails and discharge inmates from suicide precautions, but it either has not been enforced, is inadequate, or was not followed with respect to Decedent. Additionally, one of the jail reforms that the COUNTY and its policymakers were aware of the need for at least as early as September1, 2020, was the need to initiate a mental health referral and take any other appropriate action if an inmate had possible mental illness or suicidal behavior during previous incarcerations.

91. As of September 1, 2020, the COUNTY and its policymakers and administrators were

*Shoar, et al. v. County of Santa Clara, et al.*
Complaint for Damages, Declaratory and Injunctive Relief, and Demand for Jury Trial
Case No.
23

aware of the need as part of the March 10, 2020 Board Study Session to have a policy permitting the Custody Health Services staff to discontinue suicide precautions only after conducting an appropriate assessment, for CHS staff to perform an appropriate assessment before the scheduled release of an inmate on suicide precautions, for inmates discharged from suicide precautions to get an appropriate treatment plan and follow-up assessments by CHS staff, and that CHS staff needed to be trained on the Suicide Risk Assessment form and development of treatment plans, with the training to be developed for new and existing custody and custody health employees, along with regular refresher training. Additionally, the COUNTY and its policymakers and administrators were aware that this training needed to include avoiding negative attitudes, the impact of correctional environments on suicidal behavior, predisposing factors, high-risk time periods, warning signs, and a suicide prevention policy, inter alia.

92. On information and belief, despite this knowledge that the COUNTY, including the named Defendants as well as its policymakers and administrators, such as the policymakers, supervisors, and administrators of the CHS staff and the SCSO, had at least as of September 1, 2020, and in fact had much earlier, they failed to implement and/or enforce and/or properly execute these drastically needed suicide prevention policies, which failure was a moving force and proximate cause of the deprivations of Plaintiffs' and Decedent's clearly established and well-settled constitutional rights, in violation of 42 U.S.C. § 1983, as more fully set forth above in the First Cause of Action.

93. The COUNTY's failures are so pervasive and longstanding that the Attorney General of the State of California recently commenced an investigation into civil rights violations at the COUNTY OF SANTA CLARA Sheriff's Office, which are tied to conditions inside its jail facilities, the SCSO's resistance to lawful oversight, and other alleged misconduct. According to a recent news article:

    a. "Public safety is built on trust," Attorney General Rob Bonta said in a news release. "However, it is clear that there is a lack of trust in Santa Clara County as a result of deeply concerning allegations around county jail facilities and other misconduct. These

*Shoar, et al. v. County of Santa Clara, et al.*
Complaint for Damages, Declaratory and Injunctive Relief, and Demand for Jury Trial
Case No.
24

concerns have been repeatedly voiced by elected leaders, editorial boards, community members, and more." Attorney General Rob Bonta noted that jail conditions and in-custody deaths were a major concern. "These concerns have been repeatedly voiced by elected officials. It is time that the truth come to light," said Bonta. "In the days and months ahead, we promise that our investigation will be thorough and impartial. We will go where the facts and the law take us."

94. Even prior to the commencement of an investigation by the California Attorney General, County of Santa Clara Supervisors Joe Simitian and Otto Lee co-sponsored a legislative referral on or about August 12, 2021 for investigations into Sheriff LAURIE SMITH and her office, which was prompted by a number of "horrific" incidents in the COUNTY OF SANTA CLARA jails. According to a media report, "Bad things keep happening in our jails," Supervisor Simitian said. "It's just got to stop."

95. Plaintiffs allege, upon information and belief, the unconstitutional actions and/or omissions of the individually named COUNTY Defendants were pursuant to the following customs, policies, practices and/or procedures of the COUNTY, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policy making officials for the COUNTY and its agencies, including, but not limited to, Defendants EUREKA C. DAYE, LAURIE SMITH, DOES 1-10, the Santa Clara Valley Health and Hospital System, Custody Health Services, and the Santa Clara County Sheriff's Office:

    a.   To deny inmates at the COUNTY'S jail access to appropriate, competent, and necessary care for serious medical and psychiatric needs, including, but not limited to, by failing to require that all medical/psychiatric staff and supervisors at the jail be properly trained, supervised, credentialed, and licensed as required by law;

    b.   To fail to implement and/or enforce and/or properly execute drastically needed suicide prevention policies, which COUNTY officials knew and/or had reason to know were needed;

    c.   To fail to ensure that suicide precautions are not lifted without a proper assessment and without reasonable prevention precautions

*Shoar, et al. v. County of Santa Clara, et al.*
Complaint for Damages, Declaratory and Injunctive Relief, and Demand for Jury Trial
Case No.
25

d.  To fail to ensure an individualized treatment plan is formulated and followed before suicide prevention precautions are lifted;

e.  To fail to ensure an individualized safety plan is formulated, documented, and followed prior to the lifting of suicide safety precautions;

f.  To fail to properly classify, house, and/or monitor inmates suffering from mental health disabilities, including placement on suicide watch with proper suicide precautions, including failing to consider in any way the clear and obvious danger of placing inmates at risk of suicide in cells with means to hang and injure themselves (including bunk beds, horizontal bars, clothing, and ligature materials) and without the frequent, logged observation required by law;

g.  To allow, encourage, and require unlicensed, inadequately trained, and inadequately supervised medical staff to make decisions to place jail inmates on, and remove inmates from, suicide watch in direct violation of applicable law and standards, including permitting unlicensed and/or untrained medical staff to remove severely mentally ill inmates from suicide watch without a reasonable, appropriate, and lawful basis for doing so;

h.  To fail to institute proper procedures and training to coordinate inmate assessment, placement, suicide watch decisions, transfers psychiatric facilities, and care with the COUNTY medical staff, jail physicians, jail psychiatrists, court, and/or jail corrections staff, where there was an obvious need for such to prevent the type of tragedy that occurred in this case;

i.  To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures for handling, housing, and caring for mentally ill and/or emotionally disturbed inmates at the COUNTY Jail, including alternatives to placing such ill and disturbed inmates in need of treatment in solitary confinement or segregation cells that are intended and used to punish inmates, with the obvious consequence that the mental health needs of such inmates remain unaddressed and are in fact aggravated and increased by such punitive treatment;

j.  To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in this Complaint and in subparagraphs (a) through (i) above, when the need for such was obvious, with deliberate indifference to the rights and safety of Plaintiffs, Decedent, and the public, and in the face of an obvious need for such policies, procedures, and training programs.

96. In the alternative, upon information and belief, Defendant COUNTY may have instituted policies or training addressing some or all the topics listed above, but with deliberate indifference to citizens' rights, failed to properly oversee, enforce, and/or properly carry out such policies and/or training.

*Shoar, et al. v. County of Santa Clara, et al.*
Complaint for Damages, Declaratory and Injunctive Relief, and Demand for Jury Trial
Case No.
26

97. The above-described customs, policies, practices, and/or procedures of the COUNTY were a moving force and/or a proximate cause of the deprivations of Plaintiffs' and Decedent's constitutional rights, in violation of 42 U.S.C. § 1983, as more fully set forth above the First Cause of Action.

98. Defendant COUNTY is also liable for the violations of Plaintiffs' and Decedent's rights by their final policy makers, including Director DAYE, Sheriff SMITH, and DOES 1-10, as described above. (*See*, Ninth Circuit Model Civil Jury Instruction 9.6).

99. On information and belief, the COUNTY conducted an investigation and review of this matter leading to the death of VAHID HEJAZI SHOAR, and Defendants SMITH and DOES 1-10 directly and personally participated in such investigation and review. The unconstitutional actions and/or omissions of the individually named Defendants, DOES 1-10, and other COUNTY personnel, as described above, were approved, tolerated, and/or ratified by policy making officers for the COUNTY. Plaintiff is informed and believes, and thereupon alleges, the details of this incident have been revealed to the authorized policy makers within the COUNTY, including the COUNTY agencies listed above, and that such policymakers have direct knowledge of the fact that VAHID HEJAZI SHOAR was unlawfully denied necessary care for his serious medical needs due to their and their subordinates' misconduct and violations of Decedents' rights. Notwithstanding this knowledge, the authorized policymakers within the COUNTY, including the various COUNTY agencies listed above, have approved of the individually named Defendants' and DOES 1-10s' conduct and decisions in this matter to the extent such individuals were under their supervision and oversight, and have made a deliberate, conscious, and affirmative choice to endorse and ratify such conduct and decisions, and the basis for them, which resulted in the death of VAHID HEJAZI SHOAR. By so doing, the authorized policymakers within the COUNTY have shown affirmative agreement with the conduct of individual Defendants and other employees/agents under their supervision, and have ratified the unconstitutional acts of these individual Defendants, employees, and agents.

100.       The aforementioned customs, policies, practices, and procedures; the failure to

*Shoar, et al. v. County of Santa Clara, et al.*
Complaint for Damages, Declaratory and Injunctive Relief, and Demand for Jury Trial
Case No.
27

properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and, the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of Defendants COUNTY, DAYE, SMITH, and DOES 1-10 were a moving force and/or a proximate cause of the deprivations of Plaintiffs' and Decedent's clearly established and well-settled constitutional rights, in violation of 42 U.S.C. § 1983, as more fully set forth above in the First Cause of Action.

101.    As a direct and proximate result of the foregoing unconstitutional actions, omissions, customs, polices, practices, and/or procedures of Defendants COUNTY, DAYE, SMITH, and DOES 1-10, or the lack or inadequacy thereof, Plaintiffs sustained serious and permanent injuries and damages, and are entitled to damages, penalties, costs, and attorneys' fees, as set forth above, in ¶¶ 76-77, and punitive damages against Defendants COUNTY, DAYE, SMITH, and DOES 1-10, in their individual capacities.

**THIRD CAUSE OF ACTION**
**(VIOLATION OF CALIFORNIA CIVIL CODE § 52.1 (b) – BANE ACT)**
**PLAINTIFFS AGAINST DEFENDANTS COUNTY, DAYE, SMITH, MATHEWS, SPARKS, and DOES 11-50**

102.    Plaintiffs re-allege and incorporate by reference each and every paragraph contained in this complaint, as if fully set forth here.

103.    By their acts, omissions, customs, and policies, each Defendant, acting in concert/conspiracy, as described above, interfered with, and/or attempted to interfere with, by acting with a reckless disregard for Plaintiffs' and Decedent's rights, violated Plaintiffs' and Decedent's rights under California Civil Code § 52.1, by violating the following clearly established rights under the United States Constitution and the California Constitution:

   a. Decedent's right to be free from an unreasonable ongoing seizure as a pretrial detainee, as secured by the Fourth and Fourteenth Amendments to the United States Constitution and the California Constitution, Article 1, Sections 7 and 13;

   b. Decedent's right to be free from deliberate indifference to his serious medical needs while in custody as a pretrial detainee, as secured by the Fourteenth Amendment to the United States Constitution and the California Constitution, Article 1, Section 7;

*Shoar, et al. v. County of Santa Clara, et al.*
Complaint for Damages, Declaratory and Injunctive Relief, and Demand for Jury Trial
Case No.
28

c.  Plaintiffs' right to be free from wrongful government interference with familial relationships and Plaintiffs' right to companionship, society, and support of each other, as secured by the First and Fourteenth Amendments;

d.  Plaintiffs' right to enjoy and defend life and liberty; acquire, possess, and protect property; and pursue and obtain safety, happiness, and privacy, as secured by the California Constitution, Article 1, Section 1;

e.  The right to protection from bodily restraint, harm, or personal insult, as secured by California Civil Code § 43; and

f.  Decedent's right to medical care, as required by California Government Code § 845.6.

104.    Alternatively, or concurrently, the threat, intimidation, and coercion described herein was neither necessary nor inherent to Defendants' violation of Plaintiff's rights, nor to any legitimate law enforcement activity.

105.    Further, all of Defendants' violations of duties and rights and coercive conduct, described herein, were volitional acts; none were accidental or merely negligent.

106.    To the extent this claim is based on a violation of Decedent's rights, it is asserted as a survival claim. To the extent that the violations of rights were suffered by Plaintiffs, it is asserted as a direct, wrongful death claim. To the extent the violations were done to both Decedent and Plaintiff, it is asserted as both a survival and wrongful death claim.

107.    The COUNTY is liable under California Government Code § 815.2 for injury proximately caused by an act or omission of an employee, committed within the course and scope of the employees' employment.

108.    As a direct and proximate result of Defendants' violation of California Civil Code § 52.1 and of Plaintiffs' and Decedent's rights under the United States and California Constitutions and law, Plaintiffs sustained injuries and damages, and against each and every Defendant is entitled to relief as set forth above, in ¶¶ 76-77, and to punitive damages against the individual Defendants and DOES 11–50 in their individual capacities, including all damages allowed by California Civil Code §§ 52, 52.1, and California law, including costs, attorneys' fees, three times actual damages, and civil penalties.

//

*Shoar, et al. v. County of Santa Clara, et al.*
Complaint for Damages, Declaratory and Injunctive Relief, and Demand for Jury Trial
Case No.
29

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**FOURTH CAUSE OF ACTION**
**(VIOLATION OF ADA (Title III) – 42 U.S.C. § 12132)**
**PLAINTIFF AGAINST DEFENDANT COUNTY**

109.     Plaintiffs re-allege and incorporate by reference the allegations contained in this complaint, as though fully set forth herein.

110.     At all material times, including, but not limited to prior to – and between – December 27, 2020 and January 2, 2021, VAHID HEJAZI SHOAR was a "qualified individual" with a mental illness and disability and medical impairments that limited and/or substantially limited his ability to care for himself and control his mental, medical, or physical health condition, as defined under the ADA, 42 U.S.C. § 12131 (2); as such, Decedent qualified as an individual with a mental and physical disability under California law and Decedent met the essential eligibility requirements of COUNTY programs to provide access to medical and mental health care services for its detainee/inmate patients in COUNTY's jails while they are in custody.

111.     Defendant COUNTY's jail and mental health services are places of public accommodation and are covered entities for purposes of enforcement of the ADA, 42 U.S.C. §12181 (7)(F), as explicated by the regulations promulgated under each of these laws. Further, on information and belief, Defendant COUNTY receives federal assistance and funds, including for its jail.

112.     Under the ADA, Defendant COUNTY is mandated to "develop an effective, integrated, comprehensive system for the delivery of all services to persons with mental disabilities and developmental disabilities . . . " and to ensure "that the personal and civil rights" of persons who are receiving services under its aegis are protected.

113.     Congress enacted the ADA upon a finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms of discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. § 12101 (a)(2).

114.     Defendant COUNTY is mandated under the ADA not to discriminate against any qualified individual "on the basis of disability in the full and equal enjoyment of the goods,

*Shoar, et al. v. County of Santa Clara, et al.*
Complaint for Damages, Declaratory and Injunctive Relief, and Demand for Jury Trial
Case No.
30

services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182 (a).

115.    The ADA, 42 U.S.C. § 12182(b)(1)(A)(iii), provides in pertinent part that: "[i]t shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual licensing, or other arrangements, with a good, service, facility, privilege, advantage, or accommodation *that is different or separate* from that provided to other individuals." *Id.* (emphasis added).

116.    Defendant COUNTY violated the ADA, and discriminated against VAHID HEJAZI SHOAR and Plaintiffs, violating their ADA and state protected rights by: (a) creating and maintaining a number of programs and services to protect the mentally disabled that operate in conjunction with the State of California's designated mental health hospitals and facilities for persons who qualify under Welfare and Institutions Code 5150; (b) failing to provide services or to accommodate VAHID HEJAZI SHOAR with access to the programs and services and facilities for persons who qualify for access and services under Welfare and Institutions Code 5150; (c) failing to provide services or accommodate VAHID HEJAZI SHOAR as indicated and with appropriate classification, housing, and monitoring for a person in their sole and exclusive custody who they knew was mentally disabled, and at risk for suicide; (d) failing to provide reasonable accommodations to people in custody with mental disabilities at their hospitals, clinics, and jails and, instead, providing a quality of care and service that is different, separate, inferior, and worse than the service provided to other individuals with the same disabilities; (e) denying VAHID HEJAZI SHOAR, a qualified individual with a disability, the opportunity to participate in or benefit from the aid, benefit, or services of the COUNTY, in violation of 28 C.F.R. § 35.130(b)(1)(i); (f) by reason of Decedent's mental disabilities, Defendants did not afford Decedent an opportunity to participate in or benefit from the aid, benefits, and services that are equal to those afforded to other, non-disabled individuals by Defendants, in violation of 28 C.F.R. § 35.130(b)(1)(ii); (g) on the basis of Decedent's disability, Defendants failed to provide Plaintiff an aid, benefit, or service that was as effective in affording equal opportunity to obtain the same

*Shoar, et al. v. County of Santa Clara, et al.*
Complaint for Damages, Declaratory and Injunctive Relief, and Demand for Jury Trial
Case No.
31

result, to gain the same benefit, and to reach the same level of achievement as provided to other individuals in the same situation, in violation of 28 C.F.R. §35.130(b)(1)(iii); (g) limited Decedent, a qualified individual with a disability, in the enjoyment of rights, privileges, advantages, or opportunities enjoyed by others receiving the aid, benefit, or service of which Decedent was denied, in violation of 28 C.F.R. §35.130(b)(1)(vii); and (h), Defendants failed to provide Decedent a telephone call to his son while he was on a 5150 hold and was subject to suicide precautions, which Decedent kept pleading for, and which further exacerbated Decedent's despondency, hopelessness, loneliness, and suicidality.

117.    VAHID HEJAZI SHOAR was denied the benefits of the services, programs, and activities of the COUNTY, and was denied accommodation for his disabilities, which deprived him of safety, necessary care, and mental health and medical health programs and services, which would have provided planning and delivery of treatment, follow-up, and supervision. This denial of accommodation, programs, and services was the result of his disability in that he was discriminated against because he was mentally ill, at risk for suicide, and gravely disabled, in that he suffered from conditions in which a person, as a result of a mental disorder, is unable to provide for his basic personal needs for food, clothing, or shelter and is unable to advocate for himself; and, VAHID HEJAZI SHOAR had mental impairments that substantially limited one or more of his major life activities.

118.    As a result of the acts and misconduct of Defendants COUNTY complained of herein, Plaintiff VAHID HEJAZI SHOAR died, and Plaintiffs have suffered, are now suffering, and will continue to suffer damages and injuries as alleged above. Plaintiffs SOHEIL HEJAZI SHOAR and FARZANEH MOHAMMADI have suffered loss of love and society and claim damages for the wrongful death of their father and spouse in an amount not yet ascertained, but to be proven. Plaintiffs sustained serious and permanent injuries and are entitled to damages, penalties, costs, and attorneys' fees as set forth in the ADA and above, in ¶¶ 76-77.

//

//

*Shoar, et al. v. County of Santa Clara, et al.*
Complaint for Damages, Declaratory and Injunctive Relief, and Demand for Jury Trial
Case No.
32

**FIFTH CAUSE OF ACTION**
**(NEGLIGENCE)**
**PLAINTIFF AGAINST DEFENDANTS COUNTY, DAYE, SMITH, MATHEWS, SPARKS, and DOES 11-50**

119.     Plaintiffs re-allege and incorporate by reference the allegations contained in this complaint, as though fully set forth herein.

120.     At all material times, Defendants COUNTY, SMITH, ____, DOES 11-50, and COUNTY owed MR. RAMIREZ the duty to act with due care in the execution and enforcement of any right, law, or legal obligation.

121.     At all material times, each Defendant owed VAHID HEJAZI SHOAR the duty to act with reasonable care.

122.     These general duties of reasonable care and due care owed to VAHID HEJAZI SHOAR by all Defendants includes, but were not limited, to the following specific obligations:

   a.   To provide, or have provided, prompt and timely access to appropriate treatment and safety from the grave danger he posed to himself;

   b.   To provide safe and appropriate jail custody for VAHID HEJAZI SHOAR, including reasonable classification, monitoring, and housing, including placing him on suicide watch with proper suicide precautions, and preventing access to physical conditions and items that could foreseeably be used for suicide;

   c.   To summon necessary and appropriate medical care for VAHID HEJAZI SHOAR;

   d.   To use generally accepted law enforcement and jail procedures that are reasonable and appropriate for Plaintiff's status as a mentally ill and/or emotionally disturbed person;

   e.   To use generally accepted custodial health care and suicide prevention procedures that are reasonable and appropriate for Plaintiff's status as a mentally ill and/or emotionally disturbed person;

   f.   To implement and/or enforce and/or properly execute drastically needed suicide prevention policies, which COUNTY officials knew and/or had reason to know were needed;

   g.   To properly classify, house, and/or monitor inmates suffering from mental health disabilities, including placement on suicide watch with proper suicide precautions, and to not remove an inmate from a 5150 hold without a proper suicide risk assessment, as well as considering the clear and obvious danger of

*Shoar, et al. v. County of Santa Clara, et al.*
Complaint for Damages, Declaratory and Injunctive Relief, and Demand for Jury Trial
Case No.
33

placing inmates at risk of suicide in cells with means to hang and injure themselves (including bunk beds, horizontal bars, clothing, and ligature materials) and without the frequent, logged observation required by law;

h.   To refrain from abusing their authority granted to them by law; and,

i.   To refrain from violating Plaintiffs' rights guaranteed by the United States and California Constitutions, as set forth above, and as otherwise protected by law.

123.     By the acts and omissions set forth more fully in the paragraphs above, Defendants acted negligently and breached their duty of due care, which foreseeably resulted in the suffering of damages by VAHID HEJAZI SHOAR and Plaintiffs.

124.     Defendants, through their acts and omissions, breached the aforementioned duties owed to VAHID HEJAZI SHOAR and Plaintiffs.

125.     Defendant COUNTY is vicariously liable pursuant to California Government Code section 815.2.

126.     As a proximate result of Defendants' negligence, Plaintiffs sustained injuries and damages, and against each listed Defendant in this Cause of Action is entitled to the relief described above, in ¶¶ 76-77. Plaintiff also seeks punitive damages against such individual Defendants in their individual capacities. Plaintiff does not seek punitive damages against the COUNTY.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief against each and every Defendant herein, jointly and severally:

a.   Compensatory damages in an amount according to proof and which is fair, just, and reasonable;

b.   Punitive damages against the individual Defendants, under 42 U.S.C. § 1983 and California law, in an amount according to proof and which is fair, just, and reasonable (punitive damages are not sought against Defendant COUNTY);

c.   Attorneys' fees and costs of suit under 42 U.S.C. § 1988;

d.   Attorneys' fees and costs of suit under California Civil Code §§ 52 (b)(3) and 52.1(h);

*Shoar, et al. v. County of Santa Clara, et al.*
Complaint for Damages, Declaratory and Injunctive Relief, and Demand for Jury Trial
Case No.
34

e. All other damages, penalties, costs, interest, and attorneys' fees as allowed by 42 U.S.C. §§ 1983 and 1988, California Code of Civil Procedure § 1021.5, California Civil Code §§ 52 et seq. and 52.1, and as otherwise may be allowed by California and/or federal law;

f. Injunctive and declaratory relief, including, but not limited to, the following:

    i. An order prohibiting Defendant COUNTY and its employees from engaging in the unconstitutional customs, policies, practices, training, and supervision as may be determined and/or adjudged by this case; and,

g. For such other and further relief, according to proof, as this Court may deem appropriate, just, or proper.

Dated: February 7, 2022        **LAW OFFICE OF SANJAY S. SCHMIDT**

                               */s/ Sanjay S. Schmidt*
                               By: SANJAY S. SCHMIDT
                               Attorneys for Plaintiffs,
                               SOHEIL HEJAZI SHOAR
                               and FARZANEH MOHAMMADI

### JURY TRIAL DEMAND

Plaintiffs hereby respectfully demand a jury trial, pursuant to Rule 38 of the Federal Rules of Civil Procedure, for all claims triable of right by a jury.

Dated: February 7, 2022        **LAW OFFICE OF SANJAY S. SCHMIDT**

                               */s/ Sanjay S. Schmidt*
                               By: SANJAY S. SCHMIDT
                               Attorneys for Plaintiffs,
                               SOHEIL HEJAZI SHOAR
                               and FARZANEH MOHAMMADI

*Shoar, et al. v. County of Santa Clara, et al.*
Complaint for Damages, Declaratory and Injunctive Relief, and Demand for Jury Trial
Case No.
35

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## EXHIBIT A

**CO-SUCCESSOR IN INTEREST DECLARATIONS OF PLAINTIFFS
SOHEIL HEJAZI SHOAR and FARZANEH MOHAMMADI**

*Shoar, et al. v. County of Santa Clara, et al.*
Complaint for Damages, Declaratory and Injunctive Relief, and Demand for Jury Trial
Case No.

36

Sanjay S. Schmidt (SBN 247475)
**LAW OFFICE OF SANJAY S. SCHMIDT**
1388 Sutter Street, Suite 810
San Francisco, CA 94109
T: (415) 563-8583
F: (415) 223-9717
e-mail: ss@sanjayschmidtlaw.com

*Attorneys for Plaintiffs,*
SOHEIL HEJAZI SHOAR and FARZANEH MOHAMMADI

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **SOHEIL HEJAZI SHOAR**, individually and as co-successor in interest to Decedent Vahid Hejazi Shoar, **FARZANEH MOHAMMADI**, individually and co-successor in interest to Decedent Vahid Hejazi Shoar, <br><br> Plaintiffs, <br><br> vs. <br><br> **COUNTY OF SANTA CLARA**, a municipal corporation, et al., <br><br> Defendants. | Case No.: <br><br> **CO-SUCCESSOR IN INTEREST DECLARATION OF SOHEIL HEJAZI SHOAR** <br><br> **(Cal. Code Civ. Proc. §§ 377.11, 377.32)** |

I, SOHEIL HEJAZI SHOAR, attest and declare as follows:

1. I am the son of Vahid Hejazi Shoar ("Decedent"), who died on January 2, 2021, in the City of San Jose and County of Santa Clara, California.

2. No proceeding is now pending in California for administration of the Decedent's estate.

3. I am the Decedent's co-successor in interest (as defined in Section 377.11 of the California Code of Civil Procedure) and succeed to the Decedent's interest in this action.

4. No other person has a superior right to commence the action or proceeding or to be substituted for the Decedent in the pending action or proceeding.

5. A true and correct copy of Decedent's death certificate is attached to this declaration as

Co-Successor in Interest Declaration of Soheil Hehazi Shoar
*Shoar, et al. v. County of Santa Clara, et al.*
Case No.                                    1

Exhibit A.

6. I have personal knowledge of the facts stated in this declaration. If called upon to testify to same, I am competent to do so.

I declare under penalty of perjury under the laws of the State of California, and pursuant to the laws of the United States, that the foregoing is true and correct.

Dated: February 4, 2022

_____

SOHEIL HEJAZI SHOAR

Co-Successor in Interest Declaration of Soheil Hehazi Shoar
*Shoar, et al. v. County of Santa Clara, et al.*
Case No.                                           2

1

## EXHIBIT A:

2

## DEATH CERTIFICATE OF VAHID HEHAZI SHOAR

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Co-Successor in Interest Declaration of Soheil Hehazi Shoar
*Shoar, et al. v. County of Santa Clara, et al.*
Case No.                                          3

# COUNTY of SANTA CLARA
## PUBLIC HEALTH DEPARTMENT
### VITAL RECORDS AND REGISTRATION

**CERTIFICATE OF DEATH**
STATE OF CALIFORNIA
USE BLACK INK ONLY / NO ERASURES, WHITEOUTS OR ALTERATIONS

STATE FILE NUMBER: 3052021005931

LOCAL REGISTRATION NUMBER: 3202143000244

| DECEDENT'S PERSONAL DATA | | |
|---|---|---|
| 1. NAME OF DECEDENT—FIRST (Given): VAHID | 2. MIDDLE | 3. LAST (Family): HEJAZI |
| AKA, ALSO KNOWN AS – Include full AKA (FIRST, MIDDLE, LAST): VAHID - HEJAZI SHOAR | 4. DATE OF BIRTH mm/dd/ccyy: 11/01/1968 | 5. AGE Yrs.: 52 | 6. SEX: M |
| 9. BIRTH STATE/FOREIGN COUNTRY: IRAN | 10. SOCIAL SECURITY NUMBER: 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 | 11. EVER IN U.S. ARMED FORCES? YES [ ] NO [X] UNK [ ] | 12. MARITAL STATUS/SRDP (at Time of Death): MARRIED | 7. DATE OF DEATH mm/dd/ccyy: 01/02/2021 | 8. HOUR (24 Hours): 1942 |
| 13. EDUCATION – Highest Level/Degree: HS GRADUATE | 14/15. WAS DECEDENT HISPANIC/LATINO(A)/SPANISH? YES [ ] NO [X] | 16. DECEDENT'S RACE – Up to 3 races may be listed: CAUCASIAN | | |
| 17. USUAL OCCUPATION – Type of work for most of life, DO NOT USE RETIRED: CHEF | 18. KIND OF BUSINESS OR INDUSTRY: RESTAURANT | 19. YEARS IN OCCUPATION: 10 | | |

| USUAL RESIDENCE | | |
|---|---|---|
| 20. DECEDENT'S RESIDENCE (Street and number, or location): 777 WEST MIDDLEFIELD RD. #138 | | |
| 21. CITY: MOUNTAIN VIEW | 22. COUNTY/PROVINCE: SANTA CLARA | 23. ZIP CODE: 94043 | 24. YEARS IN COUNTY: 5 | 25. STATE/FOREIGN COUNTRY: CA |

| INFORMANT | | |
|---|---|---|
| 26. INFORMANT'S NAME, RELATIONSHIP: FARZANEH MOHAMMADI, WIFE | 27. INFORMANT'S MAILING ADDRESS: 777 WEST MIDDLEFIELD RD. #138, MOUNTAIN VIEW, CA 94043 | |

| SPOUSE/SRDP AND PARENT INFORMATION | | |
|---|---|---|
| 28. NAME OF SURVIVING SPOUSE/SRDP—FIRST: FARZANEH | 29. MIDDLE: - | 30. LAST (BIRTH NAME): MOHAMMADI |
| 31. NAME OF FATHER/PARENT—FIRST: KHASRO | 32. MIDDLE: - | 33. LAST: HEJAZI SHOAR | 34. BIRTH STATE: IRAN |
| 35. NAME OF MOTHER/PARENT—FIRST: MAHIN | 36. MIDDLE: - | 37. LAST (BIRTH NAME): KAZEROOMI | 38. BIRTH STATE: IRAN |

| FUNERAL DIRECTOR/LOCAL REGISTRAR | | |
|---|---|---|
| 39. DISPOSITION DATE mm/dd/ccyy: 01/14/2021 | 40. PLACE OF FINAL DISPOSITION: LOS GATOS MEMORIAL PARK, 2255 LOS GATOS ALMADEN RD., SAN JOSE, CA 95124 | |
| 41. TYPE OF DISPOSITION(S): BU | 42. SIGNATURE OF EMBALMER: ▶ NOT EMBALMED | 43. LICENSE NUMBER: - |
| 44. NAME OF FUNERAL ESTABLISHMENT: SAN JOSE FUNERAL SERVICE | 45. LICENSE NUMBER: FD1543 | 46. SIGNATURE OF LOCAL REGISTRAR: ▶ SARA H CODY, MD | 47. DATE mm/dd/ccyy: 01/14/2021 |

| PLACE OF DEATH | | |
|---|---|---|
| 101. PLACE OF DEATH: SANTA CLARA VALLEY MEDICAL CENTER | 102. IF HOSPITAL, SPECIFY ONE: IP [ ] ER/OP [X] DOA [ ] | 103. IF OTHER THAN HOSPITAL, SPECIFY ONE: Hospice [ ] Nursing Home/LTC [ ] Decedent's Home [ ] Other [ ] |
| 104. COUNTY: SANTA CLARA | 105. FACILITY ADDRESS OR LOCATION WHERE FOUND: 751 SOUTH BASCOM AVENUE | 106. CITY: SAN JOSE |

| CAUSE OF DEATH | | |
|---|---|---|
| 107. CAUSE OF DEATH | | Time Interval Between Onset and Death | 108. DEATH REPORTED TO CORONER? YES [X] NO [ ] |
| IMMEDIATE CAUSE (Final disease or condition resulting in death) (A): HANGING | | (A): MINS | 109. CORONER'S NUMBER: 21-00065 |
| Sequentially list conditions, if any, leading to cause on Line A. Enter UNDERLYING CAUSE (disease or injury that initiated the events resulting in death) LAST (B): | | (B): | 109. BIOPSY PERFORMED? YES [ ] NO [X] |
| (C): | | (C): | 110. AUTOPSY PERFORMED? YES [X] NO [ ] |
| (D): | | (D): | 111. USED IN DETERMINING CAUSE? YES [X] NO [ ] |
| 112. OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RESULTING IN THE UNDERLYING CAUSE GIVEN IN 107: UNSPECIFIED PSYCHOTIC DISORDER; RECENT SUICIDAL IDEATION AND PRIOR SUICIDE ATTEMPTS | | | |
| 113. WAS OPERATION PERFORMED FOR ANY CONDITION IN ITEM 107 OR 112? NO | | 113A. IF FEMALE, PREGNANT IN LAST YEAR? YES [ ] NO [ ] UNK [ ] |

| PHYSICIAN'S CERTIFICATION | | |
|---|---|---|
| 114. I CERTIFY THAT TO THE BEST OF MY KNOWLEDGE DEATH OCCURRED AT THE HOUR, DATE AND PLACE STATED FROM THE CAUSE(S) STATED. Decedent Attended Since mm/dd/ccyy Decedent Last Seen Alive mm/dd/ccyy | 115. SIGNATURE AND TITLE OF CERTIFIER ▶ | 116. LICENSE NUMBER | 117. DATE mm/dd/ccyy |
| 118. TYPE ATTENDING PHYSICIAN'S NAME, MAILING ADDRESS, ZIP CODE | | | |

| CORONER'S USE ONLY | | |
|---|---|---|
| 119. I CERTIFY THAT IN MY OPINION DEATH OCCURRED AT THE HOUR, DATE AND PLACE STATED FROM THE CAUSE(S) STATED. MANNER OF DEATH: Natural [ ] Accident [ ] Homicide [ ] Suicide [X] Pending Investigation [ ] Could not be Determined [ ] | 120. INJURED AT WORK? YES [ ] NO [X] UNK [ ] | 121. INJURY DATE mm/dd/ccyy: 01/02/2021 | 122. HOUR (24 Hours): UNK |
| 123. PLACE OF INJURY (e.g., home, construction site, wooded area, etc.): JAIL | | | |
| 124. DESCRIBE HOW INJURY OCCURRED (Events which resulted in injury): HANGED SELF WITH BLANKET LIGATURE | | | |
| 125. LOCATION OF INJURY (Street and number, or location, and city, and zip): 150 WEST HEDDING STREET, SAN JOSE, CA 95110 | | | |
| 126. SIGNATURE OF CORONER / DEPUTY CORONER: ▶ SUSAN J PARSON MD | 127. DATE mm/dd/ccyy: 01/14/2021 | 128. NAME, TITLE OF CORONER / DEPUTY CORONER: SUSAN J PARSON MD, MEDICAL EXAMINER |

| STATE REGISTRAR | A | B | C | D | E | | FAX AUTH # | CENSUS TRACT |
|---|---|---|---|---|---|---|---|---|
| | | | | | | *010001004806129* | | |

---

## CERTIFIED COPY OF VITAL RECORDS

STATE OF CALIFORNIA
COUNTY OF SANTA CLARA } SS

DATE ISSUED
By 01/25/2021

This is a true and exact reproduction of the document officially registered and placed on file in the VITAL RECORDS SECTION, DEPARTMENT OF PUBLIC HEALTH.

H 3 4 9 1 6 2 8



SARA H. CODY
HEALTH OFFICER AND LOCAL REGISTRAR
OF BIRTHS AND DEATHS

This copy not valid unless prepared on engraved border displaying seal and signature of Registrar.
PHSO0 (Rev) 03/10



ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE

**Sanjay S. Schmidt (SBN 247475)**
**LAW OFFICE OF SANJAY S. SCHMIDT**
1388 Sutter Street, Suite 810
San Francisco, CA 94109
T: (415) 563-8583
F: (415) 223-9717
e-mail: ss@sanjayschmidtlaw.com

*Attorneys for Plaintiffs,*
SOHEIL HEJAZI SHOAR and FARZANEH MOHAMMADI

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **SOHEIL HEJAZI SHOAR**, individually and as co-successor in interest to Decedent Vahid Hejazi Shoar, **FARZANEH MOHAMMADI**, individually and co-successor in interest to Decedent Vahid Hejazi Shoar,<br><br>          Plaintiffs,<br><br>    vs.<br><br>**COUNTY OF SANTA CLARA**, a municipal corporation, et al.,<br><br>          Defendants. | Case No.:<br><br>**CO-SUCCESSOR IN INTEREST DECLARATION OF FARZANEH MOHAMMADI**<br><br>**(Cal. Code Civ. Proc. §§ 377.11, 377.32)** |

I, FARZANEH MOHAMMADI, attest and declare as follows:

1. I am the surviving spouse of Vahid Hejazi Shoar ("Decedent"), who died on January 2, 2021, in the City of San Jose and County of Santa Clara, California.

2. No proceeding is now pending in California for administration of the Decedent's estate.

3. I am the Decedent's co-successor in interest (as defined in Section 377.11 of the California Code of Civil Procedure) and succeed to the Decedent's interest in this action.

4. No other person has a superior right to commence the action or proceeding or to be substituted for the Decedent in the pending action or proceeding.

5. A true and correct copy of Decedent's death certificate is attached to this declaration as

Co-Successor in Interest Declaration of Farzaneh Mohammadi
*Shoar, et al. v. County of Santa Clara, et al.*
Case No.                                                                1

Exhibit A.

6.  I have personal knowledge of the facts stated in this declaration. If called upon to testify to same, I am competent to do so.

I declare under penalty of perjury under the laws of the State of California, and pursuant to the laws of the United States, that the foregoing is true and correct.

Dated: February 4, 2022

FARZANEH MOHAMMADI

Co-Successor in Interest Declaration of Farzaneh Mohammadi
*Shoar, et al. v. County of Santa Clara, et al.*
Case No.                    2

1

**EXHIBIT A:**

2

**DEATH CERTIFICATE OF VAHID HEHAZI SHOAR**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Co-Successor in Interest Declaration of Farzaneh Mohammadi
*Shoar, et al. v. County of Santa Clara, et al.*
Case No.                                    3

# STATE OF CALIFORNIA

# COUNTY of SANTA CLARA

### PUBLIC HEALTH DEPARTMENT
### VITAL RECORDS AND REGISTRATION

**CERTIFICATE OF DEATH**
STATE OF CALIFORNIA
USE BLACK INK ONLY / NO ERASURES, WHITEOUTS OR ALTERATIONS

STATE FILE NUMBER: 3052021005931

LOCAL REGISTRATION NUMBER: 3202143000244

**DECEDENT'S PERSONAL DATA**

| | | | | | |
|---|---|---|---|---|---|
| 1. NAME OF DECEDENT—FIRST (Given) VAHID | 2. MIDDLE | 3. LAST (Family) HEJAZI | | | |
| AKA, ALSO KNOWN AS – Include full AKA (FIRST, MIDDLE, LAST) VAHID - HEJAZI SHOAR | | 4. DATE OF BIRTH mm/dd/ccyy 11/01/1968 | 5. AGE Yrs. 52 | IF UNDER ONE YEAR / IF UNDER 24 HOURS Months / Days / Hours / Minutes | 6. SEX M |
| 9. BIRTH STATE/FOREIGN COUNTRY IRAN | 10. SOCIAL SECURITY NUMBER 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 | 11. EVER IN U.S. ARMED FORCES? YES [X] NO UNK | 12. MARITAL STATUS/SRDP (at Time of Death) MARRIED | 7. DATE OF DEATH mm/dd/ccyy 01/02/2021 | 8. HOUR (24 Hour) 1942 |
| 13. EDUCATION – Highest Level/Degree HS GRADUATE | 14/15. WAS DECEDENT HISPANIC/LATINO/a/SPANISH? (If yes, see worksheet on back) YES [X] NO | 16. DECEDENT'S RACE – Up to 3 races may be listed (see worksheet on back) CAUCASIAN | | | |
| 17. USUAL OCCUPATION – Type of work for most of life, DO NOT USE RETIRED CHEF | 18. KIND OF BUSINESS OR INDUSTRY (e.g., grocery store, road construction, employment agency, etc.) RESTAURANT | | | | 19. YEARS IN OCCUPATION 10 |

**USUAL RESIDENCE**

| | | | | |
|---|---|---|---|---|
| 20. DECEDENT'S RESIDENCE (Street and number, or location) 777 WEST MIDDLEFIELD RD. #138 | | | | |
| 21. CITY MOUNTAIN VIEW | 22. COUNTY/PROVINCE SANTA CLARA | 23. ZIP CODE 94043 | 24. YEARS IN COUNTY 5 | 25. STATE/FOREIGN COUNTRY CA |

**INFORMANT**

| | |
|---|---|
| 26. INFORMANT'S NAME, RELATIONSHIP FARZANEH MOHAMMADI, WIFE | 27. INFORMANT'S MAILING ADDRESS (Street and number, or rural route number, city or town, state and zip) 777 WEST MIDDLEFIELD RD. #138, MOUNTAIN VIEW, CA 94043 |

**SPOUSE/SRDP AND PARENT INFORMATION**

| | | |
|---|---|---|
| 28. NAME OF SURVIVING SPOUSE/SRDP—FIRST FARZANEH | 29. MIDDLE - | 30. LAST (BIRTH NAME) MOHAMMADI |
| 31. NAME OF FATHER/PARENT—FIRST KHASRO | 32. MIDDLE - | 33. LAST HEJAZI SHOAR | 34. BIRTH STATE IRAN |
| 35. NAME OF MOTHER/PARENT—FIRST MAHIN | 36. MIDDLE - | 37. LAST (BIRTH NAME) KAZEROOMI | 38. BIRTH STATE IRAN |

**FUNERAL DIRECTOR / LOCAL REGISTRAR**

| | |
|---|---|
| 39. DISPOSITION DATE mm/dd/ccyy 01/14/2021 | 40. PLACE OF FINAL DISPOSITION LOS GATOS MEMORIAL PARK 2255 LOS GATOS ALMADEN RD., SAN JOSE, CA 95124 |
| 41. TYPE OF DISPOSITION(S) BU | 42. SIGNATURE OF EMBALMER ▶ NOT EMBALMED | 43. LICENSE NUMBER - |
| 44. NAME OF FUNERAL ESTABLISHMENT SAN JOSE FUNERAL SERVICE | 45. LICENSE NUMBER FD1543 | 46. SIGNATURE OF LOCAL REGISTRAR ▶ SARA H CODY, MD | 47. DATE mm/dd/ccyy 01/14/2021 |

**PLACE OF DEATH**

| | | |
|---|---|---|
| 101. PLACE OF DEATH SANTA CLARA VALLEY MEDICAL CENTER | 102. IF HOSPITAL, SPECIFY ONE IP [X] ER/OP DOA | 103. IF OTHER THAN HOSPITAL, SPECIFY ONE Hospice / Nursing Home/LTC / Decedent's Home / Other |
| 104. COUNTY SANTA CLARA | 105. FACILITY ADDRESS OR LOCATION WHERE FOUND (Street and number, or location) 751 SOUTH BASCOM AVENUE | 106. CITY SAN JOSE |

**CAUSE OF DEATH**

| | | | |
|---|---|---|---|
| 107. CAUSE OF DEATH Enter the chain of events — diseases, injuries, or complications — that directly caused death. DO NOT enter terminal events such as cardiac arrest, respiratory arrest, or ventricular fibrillation without showing the etiology. DO NOT ABBREVIATE. | | Time Interval Between Onset and Death | 108. DEATH REPORTED TO CORONER? [X] YES NO |
| IMMEDIATE CAUSE (Final disease or condition resulting in death) (A) HANGING | | MINS | 21-00065 |
| Sequentially list conditions, if any, leading to cause on Line A. Enter UNDERLYING CAUSE (disease or injury that initiated the events resulting in death) LAST (B) | | | 109. BIOPSY PERFORMED? YES [X] NO |
| (C) | | | 110. AUTOPSY PERFORMED? [X] YES NO |
| (D) | | | 111. USED IN DETERMINING CAUSE? [X] YES NO |
| 112. OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RESULTING IN THE UNDERLYING CAUSE GIVEN IN 107 UNSPECIFIED PSYCHOTIC DISORDER; RECENT SUICIDAL IDEATION AND PRIOR SUICIDE ATTEMPTS | | | |
| 113. WAS OPERATION PERFORMED FOR ANY CONDITION IN ITEM 107 OR 112? (If yes, list type of operation and date) NO | | | 113A. IF FEMALE, PREGNANT IN LAST YEAR? YES NO UNK |

**PHYSICIAN'S CERTIFICATION**

| | | |
|---|---|---|
| 114. I CERTIFY THAT TO THE BEST OF MY KNOWLEDGE DEATH OCCURRED AT THE HOUR, DATE AND PLACE STATED FROM THE CAUSES STATED. Decedent Attended Since (A) mm/dd/ccyy Decedent Last Seen Alive (B) mm/dd/ccyy | 115. SIGNATURE AND TITLE OF CERTIFIER ▶ | |
| | 116. TYPE ATTENDING PHYSICIAN'S NAME, MAILING ADDRESS, ZIP CODE | 116. LICENSE NUMBER / 117. DATE mm/dd/ccyy |

**CORONER'S USE ONLY**

| | | | |
|---|---|---|---|
| 118. I CERTIFY THAT IN MY OPINION DEATH OCCURRED AT THE HOUR, DATE AND PLACE STATED FROM THE CAUSES STATED. MANNER OF DEATH — Natural / Accident / Homicide [X] Suicide / Pending Investigation / Could not be Determined | 120. INJURED AT WORK? YES [X] NO UNK | 121. INJURY DATE mm/dd/ccyy 01/02/2021 | 122. HOUR (24 Hour) UNK |
| 123. PLACE OF INJURY (e.g., home, construction site, wooded area, etc.) JAIL | | | |
| 124. DESCRIBE HOW INJURY OCCURRED (Events which resulted in injury) HANGED SELF WITH BLANKET LIGATURE | | | |
| 125. LOCATION OF INJURY (Street and number, or location, and city, and zip) 150 WEST HEDDING STREET, SAN JOSE, CA 95110 | | | |
| 126. SIGNATURE OF CORONER / DEPUTY CORONER ▶ SUSAN J PARSON MD | 127. DATE mm/dd/ccyy 01/14/2021 | 128. TYPE NAME, TITLE OF CORONER / DEPUTY CORONER SUSAN J PARSON MD, MEDICAL EXAMINER | |

**STATE REGISTRAR**

| A | B | C | D | E | | FAX AUTH# | CENSUS TRACT |
|---|---|---|---|---|---|---|---|
| | | | | | *010001004806129* | | |

## CERTIFIED COPY OF VITAL RECORDS

STATE OF CALIFORNIA } SS
COUNTY OF SANTA CLARA

DATE ISSUED
By 01/25/2021

This is a true and exact reproduction of the document officially registered and placed on file in the VITAL RECORDS SECTION, DEPARTMENT OF PUBLIC HEALTH.

H 3 4 9 1 6 2 8



SARA H. CODY
HEALTH OFFICER AND LOCAL REGISTRAR
OF BIRTHS AND DEATHS

**This copy not valid unless prepared on engraved border displaying seal and signature of Registrar.**
PHS-OD (Rev) 03/16



ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE