UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOHEIL HEJAZI SHOAR, et al., | |
| Plaintiffs, | No. C 22-00799 WHA |
| v. | |
| COUNTY OF SANTA CLARA, et al., | **ORDER RE MOTION TO DISMISS** |
| Defendants. | |

**INTRODUCTION**

In this in-custody suicide case, defendants move to dismiss claims for violations of the Americans with Disabilities Act and California's Bane Act. To the extent stated, defendants' motion is **GRANTED IN PART AND DENIED IN PART**.

**STATEMENT**

Vahid Hejazi Shoar was 52 and suffered from, *inter alia*, major depressive disorder, adjustment disorder with depressed mood, psychosis, and a methamphetamine addiction. Marital and family troubles, the loss of his food truck business, homelessness, and the death of his father and uncle caused Shoar to feel an extreme sense of hopelessness (Compl. at 8–10). In June 2020, he was arrested and eventually placed on an involuntary 72-hour hold pursuant to California Welfare & Institution Code Section 5150 ("5150 hold") after he attempted to commit suicide while in custody at the County of Santa Clara's main jail. In October 2020, Shoar was again arrested and attempted suicide four more times during that month. As a result

of these five suicide attempts, Shoar was regularly treated in the Acute Psychiatric Unit 8A of the jail, and, each time, his conduct was documented by mental health professionals (*id*. at 12–13).

On December 27, 2020, Shoar was arrested again. During the booking process, Shoar stated he intended to either hang or strangle himself once placed in a cell. As a result of his statements, he was placed on another 5150 hold. Suicide preventative measures were initiated, including fifteen-minute wellness checks and his placement in an anti-suicide smock called "the Ferguson gown" (*id.* at 9–11). On December 30, 2020, yet another 5150 hold was initiated due to Shoar's nonstop yelling and pounding while in his cell (*ibid*). The next day, Shoar was assessed by defendants Dr. Jose Mathews and Therapist Jessica Sparks. During the interview, Shoar denied ever attempting suicide and told them that he wanted to speak to his son but had not been allowed. Dr. Mathews was aware of Shoar's long history of suicide attempts by way of documentation and recommended he remain in Unit 8A with all safety measures in place. On January 1, 2021, after another interview, Dr. Mathews again suggested Shoar remain in Unit 8A (*id*. at 12–13).

On January 2, 2021, Dr. Mathews and Therapist Sparks once more interviewed Shoar. He was adamant that he was not going to talk to them unless he would be allowed to call his son on the phone. Despite these assertions, however, Shoar "proceeded to answer most of [Mathew's] questions" (*id*. at 13). After this interview, Dr. Mathews and Therapist Sparks determined that Shoar was mentally healthy enough to be moved to a regular cell and discontinued the 5150 hold along with all safety measures. Sadly, later that evening, Shoar hanged himself by using a blanket in his cell as a ligature. Five days after his death, defendants notified Shoar's family that he had killed himself in custody. Shoar's surviving wife and son filed suit against the county and others on February 8, 2022 (*id*. at 15–16).

**ANALYSIS**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. The issue is not whether plaintiffs will ultimately prevail, but whether they allege enough to be entitled to offer evidence to support their claim. *Usher v. City of Los Angeles,* 828 F.2d 556, 561

2

(9th Cir. 1987). To survive a motion to dismiss, a complaint must contain enough factual matter, accepted as true, to state a claim for relief that is plausible. A claim is facially plausible when there are sufficient factual allegations, if proven, to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Allegations of fact in the complaint must be construed in the light most favorable to plaintiffs. The court need not, however, "accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Ibid*. As explained by counsel at the hearing, the claims in dispute in this motion are only the Bane Act claim and the ADA claim. Many other claims, such as a Section 1983 claim, are not at issue now. Defendants also move to strike plaintiffs' request for punitive damages.

### 1. ADA CLAIM.

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity." 42 U.S.C. § 12132. A plaintiff alleging a violation under Title II of the ADA must show that (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of his disability. *Thompson v. Davis,* 295 F.3d 890, 895 (9th Cir. 2002). Notably, our court of appeals has held that "the ADA prohibits discrimination *because of* disability, not inadequate treatment *for* disability." Indeed, the ADA "does not create a remedy for medical malpractice." *Simmons v. Navajo County, Ariz.,* 609 F.3d 1011, 1021–22 (9th Cir. 2010) (emphasis added).

Here, defendants do not contest that Shoar was an individual with a qualifying disability or that he was otherwise qualified to participate in their mental healthcare services (Br. 6). At issue is alleged discrimination and/or denial of benefits. Plaintiffs argue that defendants violated

3

the ADA by discharging Shoar back to an unsafe cell with access to a ligature, lifting suicide precautions, and denying Shoar a phone call with his son. However, discharging Shoar back to a regular cell and ceasing suicide precautions were all the direct result of a medical determination — the complaint itself alleges on the day of the suicide Dr. Mathews and Therapist Sparks "saw decedent together again" and "after this interview, defendants discontinued the 5150 hold . . . and discharged Vahid from Unit 8A" (Compl. ¶ 47). This order finds these allegations merely say that Shoar was provided with inadequate medical treatment for his mental illness, insufficient under *Simmons*. Because it is well settled as a matter of law that the ADA cannot be used in these circumstances, this claim is **DISMISSED WITHOUT LEAVE TO AMEND**.

### 2. BANE ACT CLAIM.

California's Bane Act protects against interference "by threat, intimidation, or coercion" or an attempt to do the same "with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States . . ." Cal. Civ. Code § 52.1(b). To state a claim for relief under the Bane Act, a plaintiff must allege (1) interference or attempted interference by threat, intimidation, or coercion with an individual's rights and (2) that the interference or attempted interference was intentional. *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 67 (2015).

#### A. Threat, Intimidation, or Coercion.

Defendants argue that plaintiffs fail to state a claim under the Bane Act because they fail to allege a "threat, intimidation, or coercion" (Br. at 9). To properly allege deliberate indifference to serious medical needs, defendants say, plaintiffs are required to show the "threat, intimidation, or coercion" was *separate from* the underlying constitutional violation (Reply Br. 4). Plaintiffs say otherwise, that the coercion inherent in detention, paired with ignored medical needs, satisfies the standard. California authorities are in conflict. On the one hand, some California appellate courts side with defendants' interpretation, reasoning that the Bane Act "requires a showing of coercion independent from the coercion inherent in the wrongful detention itself." *Shoyoye v. County of Los Angeles* 203 Cal. App. 4th 947, 959 (2012). In *Shoyoye*, a clerical computer error caused the unlawful detention of the defendant for an

4

1 additional two weeks after he had been ordered released. *Id*. at 947. The significance of

2 *Shoyoye* has been the subject of dispute, however, as some courts interpret it as standing only for

3 the proposition that the threat or coercion cannot be a result of mere human error or negligence,

4 but instead requires intentional conduct. *See M.H. v. County of Alameda*, 90 F.Supp.3d 889

5 (N.D. Cal. 2013) (Judge Jon S. Tigar) (collecting cases).

6       On the other hand, in a more recent decision, another state court of appeal held that the

7 threat or coercion need not be separate from the constitutional or statutory violation alleged. *See*

8 *Cornell v. City & County of San Francisco*, 17 Cal. App. 5th 766, 798-802 (2017). *Cornell* did

9 not involve a claim of deliberate indifference to medical needs, but its reasoning applies to all

10 Bane Act claims. Indeed, *Cornell* explicitly found this logic applicable to the deliberate

11 indifference context, stating that the reasoning in *M.H.* stands in "stark contrast to others that

12 apply the independent from inherent coercion test — in our view incorrectly — outside the

13 confines of jail overdetention, taking that test to the limit of its logic." *Id.* at 802 n.31. The

14 Supreme Court of California has not yet ruled on the issue.

15       This order is persuaded by *Cornell*. Nothing in the language of the statute requires the

16 coercion element to be separate from the underlying constitutional violation. Further, deliberate

17 indifference to serious medical needs in a prison is much closer to intentional conduct rather than

18 the unintentional conduct contemplated in *Shoyoye*. *See Page v. County of Madera*, 2017 WL

19 5998227, at *4 (E.D. Cal. Dec. 4, 2017) (Judge Dale A. Drozd). Strikingly similar to our facts,

20 the court in *Page* reasoned that plaintiffs adequately alleged the "threat, intimidation, or

21 coercion" element of their Bane Act claim when they showed that a prisoner who several times

22 stated he wanted to commit suicide was first housed in a safety cell, but then later removed to a

23 cell where he had access to a bedsheet with which he committed suicide. *Id*. at *1, 4. When

24 discussing the lack of consensus and the critique that the Bane Act does not cover such claims,

25 *Page* reasoned (*ibid.*):

26       [P]laintiffs bringing Bane Act claims for deliberate indifference to
27       serious medical needs must only allege prison officials knowingly
      deprived [them] of a constitutional right or protection through acts
      that are inherently coercive and threatening, such as housing a
28       prisoner in an inappropriate cell, failing to provide treatment plans or

United States District Court
Northern District of California

adequate mental health care, and failing to provide sufficient observation.

So too here. Shoar was at first put in a safety cell, but later transferred to a regular one, where he had access to a ligature. Plaintiffs allege he was inadequately supervised without appropriate suicide prevention precautions, such as the 15-minute safety checks (Compl. ¶¶ 45–47). In a prison detention context, these actions plausibly constitute inherently coercive and threatening acts and thus satisfy the first prong.

### B. Intentional Interference.

Defendants also argue even if plaintiffs do not have to show a separate threat, they have alleged no facts to show that defendants specifically intended to harm Shoar and thus fail under the "intentional" element of the Bane Act (Br. 10). A plaintiff can satisfy the specific intent requirement of the Bane Act by showing defendant acted with reckless disregard of the right at issue. *See Cornell,* 17 Cal. App. 5th at 806. In particular, "it is not necessary for the defendants to have been thinking in constitutional or legal terms at the time of the incidents, because a reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights." *Reese v. County of Sacramento*, 888 F.3d 1030, 1045 (9th Cir. 2018).

This order finds plaintiffs have sufficiently alleged intentional interference. Other cases satisfying this standard mirror defendants' alleged reckless disregard here. In *Atayde v. Napa State Hospital*, for example, the district court found county defendants acted with specific intent when they continued to house the decedent in segregated housing after it was determined that he was mentally ill and was refusing to take his prescribed medications. 2016 WL 4943959, at *8 n.1 (E.D. Cal. Sept. 16, 2016) (Judge Dale A. Drozd). Similarly, in *Scalia v. County of Kern*, a nurse was found to have intentionally interfered when she failed to order necessary tests after the inmate fell from her bed and was injured. Only after the inmate fell from her bed again did the nurse finally request the inmate be transported to a medical facility, where she ultimately died. 308 F. Supp. 3d 1064, 1084 (E.D. Cal. Apr. 10, 2018) (Judge Lawrence J. O'Neill). Defendants' attempt to distinguish these cases as "far more severe" than the one at bar is unavailing (Reply Br. 4–6). Just like in *Scalia* and *Atayde*, Dr. Mathews and Therapist Sparks allegedly both knew

about Shoar's special medical need — namely his mental illness and heightened suicide risk — through their various interviews with Shoar and past documentation.  Because defendants failed to implement the safety precautions necessary despite this knowledge, plaintiffs sufficiently allege a case for defendants' reckless disregard.  Thus, plaintiffs' Bane Act claim stands.

    **3.**    **MOTION TO STRIKE REQUEST FOR PUNITIVE DAMAGES.**

The request to strike the prayer for punitive damages is premature given that discovery will go forward and the state of mind of defendants is uniquely within the knowledge of defendants.  Counsel shall be given the opportunity to probe their state of mind before any effort to strike punitive damages.  This motion is **DENIED**.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss the ADA claim is **GRANTED**.  Dismissal of the Bane Act claim is **DENIED**.  The motion to strike punitive damages is **DENIED**.  The answer is due in **14 CALENDAR DAYS**.

**IT IS SO ORDERED.**

Dated:  October 17, 2022.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE